STATE OF CONNECTICUT *v.* JOHN E. VITALE, JR.
(AC 22224)

Foti, Dranginis and Bishop, Js.

1

Argued January 6—officially released April 1, 2003

*Michael A. D'Onofrio*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Catherine Brannelly Austin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, John E. Vitale, Jr., appeals from the judgment of conviction, rendered after a jury trial, of forgery in the second degree in violation of General Statutes § 53a-139 (a) (1),[1] and, following his

---

[1] General Statutes § 53a-139 (a) provides in relevant part: "A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument or issues or possesses any written instrument which he knows to be forged, which is or purports to be, or which is calculated to become or represent if completed: (1) A deed . . . which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status . . . ."

conditional plea of nolo contendere,[2] of being a persis-
tent felony offender in violation of General Statutes
§ 53a-40 (a). The trial court sentenced the defendant to a
ten year term of incarceration. On appeal, the defendant
claims that the court (1) abused its discretion by admit-
ting evidence of his prior convictions for purposes of
impeachment, (2) improperly denied his motions for a
mistrial and (3) improperly denied his motion to dismiss
the part B information. We affirm the judgment of the
trial court.

The jury reasonably could have found the following
facts. In 1999, property at 169 Fairlawn Avenue in Water-
bury was owned by the defendant, subject, however,
to a life estate in his father and stepmother, Eleanore
Vitale, the victim. On November 16, 1999, the defen-
dant's father died, leaving the victim with the remaining
life interest in the property.

Shortly thereafter, the defendant sought to use that
property to secure loan proceeds, with which he
intended to purchase a business. The defendant discov-
ered, however, that his stepmother's life interest had
to be removed from the property before he could give
a mortgage on the property as security for the loan.
Through the services of an attorney, the defendant
obtained an unexecuted quitclaim deed transferring the
victim's life interest to himself. The defendant took the
deed and later returned it, fully executed with what
purported to be the victim's signature, to the attorney.
The victim had not signed the deed.

---

[2] The defendant's plea was conditionally entered and accepted by the
court pursuant to General Statutes § 54-94a. The defendant reserved the
right to appeal from the court's denial of his motion to dismiss the part B
information. See Practice Book § 61-6 (2). That information charged that
he had been convicted twice of the offense of felony murder in violation
of General Statutes § 53a-54c on August 8, 1980, and that he was sentenced,
in the Superior Court in Litchfield, to a term of twelve years to life on
September 19, 1980.

4

The defendant obtained a loan of $69,000 secured by a recorded mortgage from himself to Aames Funding Corporation doing business as Aames Home Loan (Aames). The quitclaim deed releasing the life interest was recorded on January 5, 2000, immediately before the recording of the defendant's mortgage on the property.

On March 1, 2000, the victim first learned of the mortgage on the property and that the defendant had received a $69,000 loan secured by the property. After she confronted the defendant, the victim threatened to tell the police what had happened. The defendant, during a telephone conversation that the victim recorded, implored her not to go to the police. The defendant told the victim that he would remedy the situation by returning her life interest to her. Nevertheless, the victim went to the police with her attorney and filed a complaint. Shortly thereafter, the defendant again spoke to the victim and begged her not to pursue the matter. When she asked him why he had undertaken his fraudulent actions, he answered that "it got out of hand."

Police investigators thereafter investigated the complaint. Neither the notary nor the witness to the signing of the quitclaim deed could recall anything about the person whose signature had been notarized. Police found discrepancies between the signature appearing on the deed and the victim's signature. Furthermore, the victim's first name was misspelled on the quitclaim as "Eleanor"; the victim spells her name "Eleanore."

On March 6, 2000, the defendant executed a quitclaim deed that transferred back to the victim her life interest in the property. The defendant subsequently failed to make payments on the note and Chase Manhattan Bank (Chase), Aames' successor in interest, commenced a foreclosure action against the defendant and the victim.

The court in that foreclosure action held, despite the fact that Chase's mortgage interest was recorded prior to the date that the defendant quitclaimed the victim's interest back to her, that in light of the fraudulent nature of the December 7, 1999 quitclaim deed, the victim's interest had priority over Chase's interest. Because of the fraudulent nature of the quitclaim deed, a title insurance company paid Chase the amount of the mortgage.

The defendant was arrested and charged with the crimes with which he stands convicted. This appeal followed. Additional facts will be set forth where necessary.

I

The defendant first claims that the court abused its discretion by allowing his two prior felony murder convictions that were admitted into evidence for purposes of impeachment as "two convictions of felonies involving larcenous intent."

The following additional facts underlie that claim. In 1980, the defendant was convicted, inter alia, of two counts of felony murder predicated on the crime of robbery. In 1990, he received a lifetime parole. The defendant filed a motion in limine, seeking to preclude the state from introducing evidence of the felony convictions and arguing that they were remote in time, highly prejudicial because of the violence involved and that they lacked probative value as to the issue of his credibility. The court determined that the prior felonies differed significantly from the crime charged, thereby minimizing the prejudicial effect of such evidence. The court also reasoned that because the prior convictions were predicated on the crime of robbery, they bore on credibility and that their probative value outweighed their prejudicial effect. In that initial ruling, the court indicated that it would allow the state to refer to the prior felonies only as prior convictions for robbery.

Thereafter, the defendant, after inquiry by the court as to whether he would admit to having been previously convicted of two felonies involving larcenous intent, stated that he would prefer that the court limit the state to referring to two "felony convictions." The defendant went on to state that "if the court decides, he will admit to two previous convictions that include larcenous intent." The court then allowed the state to make such reference to felony convictions that involved larcenous intent, but disallowed questions about the specific charges, sentencing or parole.

The defendant, when testifying, admitted both on direct and cross-examination that he had twice previously been convicted of felonies involving larcenous intent. The court, in its final charge, instructed the jury that the prior felony convictions were offered and admitted into evidence only for the purpose of credibility and that the jury could not use them as evidence of the defendant's guilt or to infer that because of those convictions he was likely to have committed the crime for which he was on trial. The defendant posits in his reply brief that "the classification of these convictions as felonies involving larcenous intent created more prejudice to the defendant than simply calling the offense by its name [felony murder] or preferably referring to them as unspecified felonies carrying a penalty greater than one year."[3]

Our standard of review is limited. A court's decision in acting on a motion to exclude a witness' prior record, offered to attack his credibility, will be upset only if the court abused its discretion. *State* v. *Harrell*, 199 Conn. 255, 261, 506 A.2d 1041 (1986).

---

[3] At oral argument, the defendant conceded that a partial waiver existed as to "prior felony convictions that included larcenous intent," but not as to the threshold question regarding "prior felony convictions for robbery." In that regard, he argues that an abuse of discretion took place, perhaps to a somewhat lesser degree.

As a preliminary matter, "evidence that a criminal defendant has been convicted of crimes on a prior occasion is not generally admissible. . . . There are, however, several well recognized exceptions to this rule, one of which is that [a] criminal defendant who has previously been convicted of a crime carrying a term of imprisonment of more than one year may be impeached by the state if his credibility is in issue. . . . In its discretion a trial court may properly admit evidence of prior convictions provided that the prejudicial effect of such evidence does not far outweigh its probative value. . . .

"Our Supreme Court has identified [t]hree factors [that] should be examined to determine whether a prior criminal conviction . . . has been [properly] admitted: (1) the extent to which admission is likely to prejudice the defendant's cause; (2) the significance of the prior crime as bearing on the defendant's truthfulness; and (3) the remoteness in time of the prior conviction. . . . The trial court has wide discretion in this balancing determination and every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . .

"As to the first criterion, a high degree of prejudice can be expected when the prior crime is quite similar to the crime charged because of the jury's tendency to believe that if he did it before, he probably did it again." (Citations omitted; internal quotation marks omitted.) *State* v. *Jefferson*, 67 Conn. App. 249, 261–62, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002). In the present case, the degree of potential prejudice to the defendant was minimized by the fact that his prior conviction for felony murder predicated on robbery differed significantly from the crime of forgery that was charged in this case. See *State* v. *Irving*, 27

Conn. App. 279, 290, 606 A.2d 17 (because prior conviction dissimilar to offense charged, prejudice to defendant not great), cert. denied, 222 Conn. 907, 608 A.2d 694 (1992).

Second, larceny, which is the underlying crime in any robbery, bears directly on the credibility of a witness-defendant. *State* v. *Crumpton*, 202 Conn. 224, 229, 520 A.2d 226 (1987). The conviction for felony murder, for which the predicate crime is robbery, therefore, is highly probative of truthfulness and veracity; it was highly probative of the defendant's credibility.

As to the third criterion, remoteness in time of the prior convictions, we note that although no absolute time limit has been adopted, a ten-year limit has been suggested. See *State* v. *Carter*, 228 Conn. 412, 430–31, 636 A.2d 821 (1994). The ultimate discretion whether to allow into evidence a conviction greater than ten years old rests with the court. *State* v. *Sauris*, 227 Conn. 389, 409, 631 A.2d 238 (1993). Because the prior convictions involved larcenous intent, which reflects directly on truth or veracity, as discussed previously, we cannot conclude, under the circumstances of this case, that the court abused its discretion in allowing those convictions for purposes of impeachment.[4] See, e.g., *State* v. *Cooper*, 227 Conn. 417, 630 A.2d 1043 (1993); *State* v. *Luster*, 48 Conn. App. 872, 713 A.2d 277, cert. denied, 246 Conn. 901, 717 A.2d 239 (1998).

As part of his claim, the defendant further asserts that the court abused its discretion in not allowing him to testify as to his age on the date of his convictions or the date and place of the convictions. The defendant acknowledges that allowing facts of the underlying

---

[4] The defendant argues, as part of his claim, that the court abused its discretion in allowing those remote in time convictions and that the felony murders in 1980 do not reflect directly on his veracity or credibility. See also footnote 3.

prior convictions would be improper.[5] "[O]ur review of a trial court's evidentiary ruling is limited. Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . In considering whether the trial court abused its discretion, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . . Even where evidence is improperly admitted, reversal is not warranted if the reviewing court cannot conclude . . . that the jury's perceptions of the other evidence presented in this case . . . were so affected by the improperly admitted testimony . . . that it is likely that the result of the trial would have been different in the absence of [that evidence]. . . .

"It is well established that the trial court has discretion on the admissibility of prior convictions. . . . Where the defendant admits to prior convictions on direct examination, the customary impeachment inquiry on cross-examination is limited to the name of the crime and the date of conviction . . . . The facts underlying the prior conviction are generally inadmissible . . . because they must be excluded where their prejudicial tendency outweighs their probative value." (Citations omitted; internal quotation marks omitted.) *State* v. *Morascini*, 62 Conn. App. 758, 765, 772 A.2d 703, cert. denied, 256 Conn. 921, 774 A.2d 141 (2001).

The court was well aware that the defendant was on a lifetime parole, and to allow him to testify as to anything other than as agreed, i.e., that he would "admit to two previous [felony] convictions that included larcenous

---

[5] The defendant also had sought permission to testify as to the facts of the prior convictions, that is, that he claimed to be an innocent party in a drug deal that went bad. Such issues already were resolved adversely to the defendant; see *State* v. *Vitale*, 197 Conn. 396, 497 A.2d 956 (1985); and the court properly precluded him from relitigating them.

intent," would be to "open the door" for the state to inquire further. By so "opening the door," the defendant might have invited further examination into the sentences or the fact that he was on lifetime parole at the time of the events underlying the present case. If a party delves into a particular subject during examination, he "opens the door" for further examination on that subject. *State* v. *Graham*, 200 Conn. 9, 13, 509 A.2d 493 (1986). The court reasonably could have concluded that such inquiry into the defendant's past convictions, which likely would have been to the defendant's greater prejudice, improperly would have diverted the jury's attention to issues unrelated to the case before it. Applying our standard of review, we conclude that the court did not abuse its discretion in not allowing any further evidence regarding the prior convictions.

## II

The defendant next claims that the court abused its discretion in denying his two motions for a mistrial, which were based on two unsolicited, prejudicial remarks made by the victim during examination by the state.

Facts pertinent to the defendant's claim are as follows. During the state's case-in-chief, the victim testified that the defendant had approached her at her place of employment, and spoke to her about her discovery of his fraudulent actions and how he wanted her to "handle" the matter. The prosecutor asked her if the defendant had expressed any sympathy with respect to his actions, to which the victim responded:

"[The Witness]: Yes, for himself.

"[Prosecutor]: What was that?

"[The Witness]: He was crying for himself. He says, 'I'm on parole, I'm going to jail.' "

The court sustained the defendant's objection to those remarks, ordered them stricken and instructed the jury not to consider them in reaching its verdict. After the state concluded its direct examination of the victim, the defendant requested a mistrial on the basis of the remark concerning his parole status. The court denied the motion and noted that it had not yet ruled on the defendant's motion in limine regarding reference to his prior convictions.

Thereafter, during cross-examination of the victim, defense counsel inquired about the date December 7, 1999, when the fraudulent quitclaim deed purportedly was executed, and the following colloquy took place:

"The Court: What does that date represent?

"[Defense Counsel]: The date that the deed was signed, Your Honor.

"[The Witness]: Two weeks after my husband died. He couldn't even wait.

"The Court: Strike those comments from the record.

"[The Witness]: I can't believe this.

"The Court: Just a minute.

"[The Witness]: I can't believe how rotten anybody can be.

"[Defense Counsel]: Should we take a recess, Your Honor?

"The Court: We'll take a five minute recess.

"[The Witness]: I never even had a chance to warn my husband right."

Following the recess, defense counsel requested a mistrial. The court denied the motion and stated: "I think [the members of the jury] are reasonably intelli-

gent people. They will be able to follow my instructions."

At the defendant's request, the court ordered the victim's remarks stricken. Immediately after the jury's return to the courtroom, the court instructed it as follows:

"Prior to excusing you, there was an emotional situation with the witness. Obviously, this is an emotional situation for her, but I ask you to strike any of her comments that she may have made immediately preceding the time that I excused you. You are only to consider the comments that are allowed into evidence, not any comments that are stricken. And, at some point in the case, I will instruct you that sympathy does not play a part in this case. If at some point you should come to feel, have feelings of any sympathy for any party, either party, I'll ask you to set aside those feelings and judge the case based strictly on the evidence that is presented." During its final instructions to the jury, the court again instructed the jury not to consider any remarks that it had stricken and further ordered it not to be influenced by feelings of sympathy.

"The decision as to whether to grant a motion for a mistrial . . . is one that requires the trial court to exercise its judicial discretion. . . . Our review of the trial court's exercise of its discretion is limited to questions of whether the court correctly applied the law and could reasonably have concluded as it did. . . . Every reasonable presumption will be given in favor of the trial court's ruling. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion. . . .

"While the remedy of a mistrial is permitted under the rules of practice, it is not favored. . . . If curative action can obviate the prejudice, the drastic remedy of

a mistrial should be avoided. . . . The general rule in Connecticut is that a mistrial is granted only where it is apparent to the court that as a result of some occurrence during trial a party has been denied the opportunity for a fair trial. . . . The trial court enjoys wide discretion in deciding whether a mistrial is warranted . . . and its evaluation as to events occurring before the jury is to be accorded the highest deference. . . . Every reasonable presumption will be given in favor of the trial court's ruling . . . because the trial court, which has a firsthand impression of the jury, is in the best position to evaluate the critical question of whether the juror's or jurors' exposure has prejudiced a defendant. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion. . . . A reviewing court gives great weight to curative instructions in assessing error." (Citations omitted; internal quotation marks omitted.) *State* v. *Relliford*, 63 Conn. App. 442, 447–48, 775 A.2d 351 (2001).

Our review of the record reveals that the court's curative instructions adequately remedied any prejudicial impact that the victim's statements may have had on the jury, and, therefore, we conclude that the court did not abuse its discretion in denying the defendant's motions for a mistrial. "It is well established that [j]urors are presumed to have followed the instructions of the court as to the law in the absence of a clear indication to the contrary." (Internal quotation marks omitted.) *State* v. *Taylor*, 63 Conn. App. 386, 397 n.11, 776 A.2d 1154, cert. denied, 257 Conn. 907, 777 A.2d 687, cert. denied, 534 U.S. 978, 122 S. Ct. 406, 151 L. Ed. 2d 308 (2001).

The defendant has not sustained his burden to establish that "in the context of the proceedings as a whole, the stricken testimony was so prejudicial, notwithstanding the court's curative instructions, that the jury cannot

be presumed to have disregarded it." (Internal quotation marks omitted.) *State* v. *Whipper*, 258 Conn. 229, 258, 780 A.2d 53 (2001).

### III

In his final claim, the defendant alleges that the court improperly denied his motion to dismiss the part B information. On May 16, 2001, the first day of jury selection, but before a juror had been selected, the state filed the part B information charging the defendant with being a persistent serious felony offender. The defendant did not object to the filing of the information at that time.[6] The defendant argues in his principal brief that had he been "placed on notice of the part B information earlier, he would have had a better opportunity to defend against it and to possibly enter into a negotiated disposition, knowing that his exposure had increased from five years to ten years."

"We must first consider the standard of review where a claim is made that the court failed to grant a motion to dismiss. Our standard of review of a trial court's . . . conclusions of law in connection with a motion to dismiss is well settled. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts . . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo." (Internal quotation marks omitted.) *State* v. *Weiner*, 61 Conn. App. 738, 747, 767 A.2d 1220, cert. denied, 256 Conn. 902, 772 A.2d 600 (2001).

"Before the commencement of trial, a prosecutor has broad authority to amend an information under Practice Book § 623 [now § 36-17]. Once the trial has started,

---

[6] The defendant objected at the conclusion of the trial by way of his written motion to dismiss.

however, the prosecutor is constrained by the provisions of Practice Book § 624 [now § 36-18]. . . . This court has held that for purposes of Practice Book §§ 623 [now § 36-17] and 624 [now § 36-18], a criminal trial begins with the voir dire of the prospective jurors." (Citation omitted; internal quotation marks omitted.) *State* v. *Phillips*, 67 Conn. App. 535, 539, 787 A.2d 616 (2002).

The state properly filed the part B information prior to the commencement of trial; leave of the court was not required. The defendant received adequate notice to allow him to prepare a defense; he did not request a continuance for that purpose, but rather chose to enter a conditional plea of nolo contendere after the court denied his motion to dismiss. The defendant has failed to demonstrate prejudice; he cannot show that he was unable to prepare a defense or any other actual or specific prejudice. His bare assertion of prejudice is insufficient. See *State* v. *Ramos*, 176 Conn. 275, 279–80, 407 A.2d 952 (1978).

The judgment is affirmed.

In this opinion the other judges concurred.