STATE OF CONNECTICUT *v.* ANTHONY PAULING
(AC 26973)

Flynn, C. J., and McLachlan and Peters, Js.

Argued March 21—officially released July 17, 2007

*Deborah G. Stevenson*, special public defender, for the appellant (defendant).

*Timothy F. Costello*, special deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Kevin Dunn*, assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Anthony Pauling, appeals from the judgment of conviction rendered after a jury trial, of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a), assault in the third degree in violation of General Statutes § 53a-61 (a) (1), failure to appear in the second degree in violation of General Statutes § 53a-173 (a) (1) and failure to appear in the first degree in violation of General Statutes § 53a-172 (a) (1).[1] On appeal, the defendant claims that the trial court improperly (1) denied his motion for a judgment of acquittal at the close of the state's case because (a) the evidence was insufficient to sustain his conviction as to all four crimes and (b) the state failed to disprove his claim of self-defense, and (2) instructed the jury on the presumption of innocence, reasonable

---

[1] The jury found the defendant not guilty of the charge of assault in the second degree in violation of General Statutes § 53a-60 (a) (1).

doubt and self-defense. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and Tamisha Davenport had a romantic relationship. It began when they were teenagers, but they parted after a few months and did not see each other for several years. Approximately seven to eight years before the date of the incident, they resumed their relationship. The relationship was good at first, but gradually it began to deteriorate. Nevertheless, Davenport allowed the defendant to move into her apartment approximately two to three months prior to the incident because he had no other place to live.

On the morning of July 7, 2002, the defendant gave Davenport a greeting card for her birthday. She thanked him, but he told her that she had "an attitude," and he angrily left the apartment. Sometime later that day, he telephoned Davenport and told her that he had hidden a birthday gift for her somewhere in the apartment. He hung up, then called her again and told her to wait for him. She told the defendant that she was going out with her neighbor for drinks. When the defendant returned to the apartment, Davenport was having a telephone conversation with Lou, a close male friend. Lou telephoned Davenport everyday, but they did not have a romantic relationship. According to Davenport, the defendant became upset whenever Lou called her.

That day, the defendant asked Davenport to whom she had been speaking, and she responded that the caller had been Lou. The defendant told Davenport that he was "tired of this shit," and he started gathering his clothes and belongings from the bedroom in the apartment. As he was stuffing his clothes into a bag, the defendant complained that Davenport had not given him anything for his birthday the month before. As they spoke, the defendant became more and more angry.

Davenport started to walk out of the bedroom, and the defendant grabbed her by her hair and slapped her across the face. After he slapped her two more times, she hit him. He grabbed her neck, threw her down on the bed and began to choke her. He told her that he was going to kill her. She fought back and scratched him. At least three times she got off the bed, but he grabbed her and threw her back on the bed and continued to choke her.

At that point, Davenport began screaming for her neighbor, who occupied the apartment next to hers in the same building, to telephone the police. Davenport managed to free herself and was trying to get through the bedroom doorway to leave the apartment. The defendant grabbed her by the shoulder and threw her into the wall. The back of her head hit the wall first, followed by her entire body, leaving a large indentation in the Sheetrock. She kept screaming for her neighbor to telephone the police. Davenport then tried to run for the outside door in the kitchen and stumbled over a broom. The defendant threw her to the floor, punched her twice in the face and kicked her. One of the punches was with a closed fist to Davenport's left eye, and she felt the eyeball go back into her socket.

The neighbor and her boyfriend then came into Davenport's apartment, having already telephoned the police. The defendant left. After the police and paramedics arrived, Davenport went to the emergency department at a hospital. The next day, her father took her to the police department to file charges and to meet with the victim's advocate. That same day, the defendant arrived at the police station. He spoke with the same officer who had responded to the neighbor's telephone call on the day of the incident. The officer had seen Davenport's injuries. The defendant told the officer that he had struck Davenport but that he had done so in self-defense. He showed the officer a scratch mark

on his forearm. The officer determined that the scratch mark was a defensive wound from a victim, and he issued the defendant a summons to appear in court.

The following procedural history is also relevant to the defendant's claims on appeal. Initially, the defendant was charged with assault in the third degree, a misdemeanor.[2] The defendant first appeared in court on July 9, 2002, and his case was continued to August 7, 2002. After subsequent continuances, the case was continued to October 24, 2002. At that time, the defendant was present when the prosecutor requested and was granted a continuance to November 20, 2002. The prosecutor wanted additional time to speak with Davenport because he had been informed that the injury to her left eye might have affected her eyesight. When the defendant's case was called on November 20, 2002, there was no response. The court issued a rearrest order and set bond in the amount of $10,000.

The rearrest warrant was served on January 10, 2003. The defendant appeared in court on January 13, 2003, and was ordered to reappear on January 14, 2003. On that date, his case was continued to February 5, 2003, and then to March 13, 2003. On March 13, 2003, the state filed a substitute information charging assault in the second degree, a felony.[3] The state also added a charge of failure to appear in the second degree[4]

[2] General Statutes § 53a-61 provides in relevant part: "(a) A person is guilty of assault in the third degree when . . . [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . .

"(b) Assault in the third degree is a class A misdemeanor . . . ."

[3] General Statutes § 53a-60 provides in relevant part: "(a) A person is guilty of assault in the second degree when . . . [w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person . . . .

"(b) Assault in the second degree is a class D felony."

[4] General Statutes § 53a-173 (a) provides in relevant part: "A person is guilty of failure to appear in the second degree when (1) while charged with the commission of a misdemeanor . . . and while out on bail or

because of the defendant's failure to appear in court on November 20, 2002. The case was continued to March 27, 2003, for a pretrial.

On March 27, 2003, the defendant arrived at the courthouse in the morning and spoke briefly with his public defender. He was not present, however, when the court called his case for the pretrial, and the court issued a rearrest order and set bond in the amount of $5000. The defendant was arrested on December 7, 2003. Two additional charges were added before trial, unlawful restraint in the first degree[5] in connection with the original incident and failure to appear in the first degree[6] for failing to appear at his pretrial on March 27, 2003.

Jury selection commenced on November 17, 2004, and the presentation of evidence began on November 19, 2004. At the conclusion of the state's case, the defendant moved for a judgment of acquittal on all four counts of the substituted information. The court denied that motion, and the defendant put on his case. Evidence concluded on November 23, 2004. The jury returned its verdict on November 24, 2004, finding the defendant guilty of the crimes of unlawful restraint in the first degree, assault in the third degree, failure to appear in the second degree and failure to appear in the first degree, and finding him not guilty of the crime of assault in the second degree. The court accepted

released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear . . . ."

[5] General Statutes § 53a-95 provides: "(a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury.

"(b) Unlawful restraint in the first degree is a class D felony."

[6] General Statutes § 53a-172 (a) provides in relevant part: "A person is guilty of failure to appear in the first degree when (1) while charged with the commission of a felony and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear . . . ."

the verdict and rendered judgment accordingly. This appeal followed.

I

The defendant first claims that there was insufficient evidence to convict him of unlawful restraint in the first degree, assault in the third degree, failure to appear in the second degree and failure to appear in the first degree. Additionally, he claims that the state failed to disprove his claim of self-defense.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving

substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty. . . . [W]e do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Citations omitted; internal quotation marks omitted.) *State* v. *Lopez*, 280 Conn. 779, 808–809, 911 A.2d 1099 (2007).

A

The defendant claims that the court, in denying his motion for a judgment of acquittal, improperly determined that the state had proven the elements of unlawful restraint in the first degree because there was no evidence presented at trial that he restrained Davenport beyond "the most minuscule movement or duration of

confinement . . . ."[7] (Internal quotation marks omitted.) See *State* v. *Winot*, 95 Conn. App. 332, 341–42, 897 A.2d 115, cert. granted on other grounds, 279 Conn. 905, 901 A.2d 1229 (2006). Specifically, he argues that Davenport was able to leave the room without being stopped.

General Statutes § 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury." The term "restrain" is defined in General Statutes § 53a-91 (1): " 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. . . ."

The defendant claims that the state failed to prove beyond a reasonable doubt that he restrained Davenport at any time because she never was prevented from

[7] In reviewing this claim, we look to all of the evidence presented to the jury and not just the evidence presented at the close of the state's case. "The so-called 'waiver rule' provides that, when a motion for [a judgment of] acquittal at the close of the state's case is denied, a defendant may not secure appellate review of the trial court's ruling without [forgoing] the right to put on evidence in his or her own behalf. The defendant's sole remedy is to remain silent and, if convicted, to seek reversal of the conviction because of insufficiency of the state's evidence. If the defendant elects to introduce evidence, the appellate review encompasses the evidence in toto." (Internal quotation marks omitted.) *State* v. *Perkins*, 271 Conn. 218, 220, 856 A.2d 917 (2004).

In his appellate brief, the defendant asserts that the "waiver rule is unconstitutional and should be reversed by our Supreme Court . . . ." (Internal quotation marks omitted.) First, our Supreme Court recently upheld the constitutionality of the waiver rule in *State* v. *Perkins*, supra, 271 Conn. 237. Second, "[w]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them." (Internal quotation marks omitted.) *Mazzuca* v. *Sullivan*, 94 Conn. App. 97, 102, 891 A.2d 83, cert. denied, 278 Conn. 905, 896 A.2d 107 (2006).

The defendant does not rely solely on that argument, however, and con-

leaving the bedroom or the apartment. According to the defendant, the evidence showed the " 'most minuscule' " of confinement as the two " 'wrestl[ed]' " on the bed. See *State* v. *Winot*, supra, 95 Conn. App. 341–42.

The jury was free to credit the testimony of Davenport and to disbelieve the defendant's version of the events. Here, construing the evidence in the light most favorable to sustaining the verdict, the defendant grabbed Davenport by her hair, slapped her in the face three times, grabbed her by the throat, threw her onto the bed and held her down. When she nearly broke free while struggling on the bed, he grabbed her and threw her back onto the bed a number of times. Additionally, he grabbed her by the shoulder when she tried to escape through the bedroom doorway and threw her into the wall. The record contains evidence that Davenport struggled with and resisted the defendant and that he continued to use force to keep her on the bed. Clearly, such actions cannot be characterized as "the most minuscule movement or duration of confinement . . . ." (Internal quotation marks omitted.) Id. From the evidence presented, the jury reasonably could have found that Davenport was restricted in her movements in a manner that interfered with her liberty. See *State* v. *Luster*, 48 Conn. App. 872, 880–81, 713 A.2d 277, cert. denied, 246 Conn. 901, 717 A.2d 239 (1998).

B

The defendant also claims that there was insufficient evidence to convict him of assault in the third degree because the state failed to prove the key element of intent.[8] Although the defendant conceded at trial that

tends that there was insufficient evidence presented during the course of the entire trial to support the jury's verdict.

[8] The defendant was charged in the substitute information with assault in the second degree but was found not guilty of that charge and was convicted instead of the lesser included offense of assault in the third degree. In a footnote in his appellate brief, the defendant claims that he was subjected improperly to multiple punishments for the same offense in violation of his

Davenport did suffer serious injury, he claims that the state never adduced any evidence of his subjective intent to cause such an injury.

A person is guilty of assault in the third degree when, with intent to cause physical injury to another person, he causes such injury to such person. General Statutes § 53a-61 (a) (1). The term "physical injury" is defined in General Statutes § 53a-3 (3) to mean "impairment of physical condition or pain . . . ."

"It is well established that the question of intent is purely a question of fact. . . . Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Intent may be gleaned from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Internal quotation marks omitted.) *State* v. *Salaman*, 97 Conn. App. 670, 677, 905 A.2d 739, cert. denied, 280 Conn. 942, 912 A.2d 478 (2006).

constitutional protection against double jeopardy.

The defendant was not charged with assault in the third degree as a separate offense in the information, but rather was exposed to a conviction of that crime as a lesser offense included within assault in the second degree. The court clearly instructed the jury that it would have to find the defendant not guilty of assault in the second degree before it could consider whether there was sufficient evidence to establish that he was guilty of the lesser included offense of assault in the third degree. "It is to be presumed that the jury followed the court's instructions unless the contrary appears." *State* v. *Rouleau*, 204 Conn. 240, 254, 528 A.2d 343 (1987). The defendant's double jeopardy claim is without merit.

Here, the jury reasonably could have concluded that the defendant intended to injure Davenport physically by crediting her testimony that he choked her, threw her into the wall, causing a large indentation in the Sheetrock, told her that he was going to kill her and punched her in the left eye with his closed fist. An expert witness testified that Davenport suffered blowout fractures of the orbital walls of her left eye socket, which causes her eye to sit back further from the front of the opening, and that the injury has resulted in pain, double vision and headaches. Accordingly, the state presented sufficient evidence to sustain the defendant's conviction of assault in the third degree.

C

The defendant also claims that there was insufficient evidence to convict him of the two charges of failure to appear. Specifically, the defendant argues that the state failed to prove the element of wilfulness that is required under General Statutes §§ 53a-173 (a) (1) and 53a-172 (a) (1). He claims that the state proved only that he was not present in court when his case was called on November 20, 2002, and March 27, 2003, but that it did not refute his testimony that he had to care for his gravely ill mother on those two occasions.

"[T]o secure a conviction for failure to appear . . . the state must prove beyond a reasonable doubt that the defendant was legally ordered to appear under the terms of his bail bond, that he failed to appear and that such failure was wilful. To prove the wilful element of failure to appear the state must prove beyond a reasonable doubt . . . that the defendant received and deliberately ignored a notice to appear . . . ." (Internal quotation marks omitted.) *State* v. *Hoover*, 54 Conn. App. 773, 776, 738 A.2d 685 (1999).

With respect to the charge of failure to appear in the second degree, the state presented the following

evidence. The defendant was present in court on October 24, 2002, when the court continued his case to November 20, 2002. He failed to appear on November 20, 2002, and the court issued a rearrest order. When police officers attempted to serve the rearrest warrant at the home of the defendant's mother on January 9, 2003, the defendant opened the door but denied that Anthony Pauling was there. He then closed the door and quickly left the residence by the back door.[9]

Significantly, the defendant's own testimony indicated that he knew he was required to be in court on November 20, 2002. He admitted that he was not present but stated that he had telephoned the clerk's office at the courthouse to request another court date because of his mother's illness. The clerk had testified, however, that there was no notation of that call in the defendant's file.

With respect to the charge of failure to appear in the first degree, the state presented the following evidence. The defendant was not present in court when his case was called on March 27, 2003. The court issued a rearrest order at that time. When the police located him at a motel and attempted to execute the arrest warrant, the defendant gave the officer a false name. When asked to spell his last name, he gave two different spellings. The officer discovered the defendant's true identity from his driver's license and arrested him.

Again, during his testimony at trial, the defendant admitted that he knew that he had a scheduled court date for March 27, 2003. He further admitted that he had been in court on the previous court date when

[9] The state argued that such conduct reflected the defendant's consciousness of guilt; see State v. Perkins, supra, 271 Conn. 249; State v. LaSalle, 95 Conn. App. 263, 272, 897 A.2d 101, cert. denied, 279 Conn. 908, 901 A.2d 1227 (2006); and the trial court gave a jury instruction on consciousness of guilt.

the court ordered the pretrial for March 27, 2003. He indicated that he came to court earlier that day but told his public defender that he had to leave to take his mother to a medical appointment.

From that evidence, the jury reasonably could have found that the defendant had notice of his scheduled court dates of November 20, 2002, and March 27, 2003, that he was not present when his case was called and that he deliberately chose not to be present. The defendant cites no case law for the proposition that a defendant is not obligated to appear if he believes that he has a good reason for his absence.[10] The defendant simply failed to comply with the court's orders to be present on November 20, 2002, and March 27, 2003, even though he had knowledge of those scheduled court dates and had not obtained continuances to reschedule them. Accordingly, we conclude that there was sufficient evidence to sustain the defendant's conviction of the two charges of failure to appear.[11]

[10] Furthermore, the jury was not obligated to credit his proffered reasons for those failures to appear.

[11] The defendant additionally claims that the court should have granted his motion for a judgment of acquittal on the charge of failure to appear in the first degree because he was not provided with notice that he was subject to an increased penalty for failure to appear after the court allowed the state to file an amended information on March 13, 2003, which substituted the charge of assault in the second degree, a felony, for the charge of assault in the third degree, a misdemeanor. The defendant argues that the court improperly permitted the state to amend the information without that notice. The defendant cites no case law to support that contention.

The state filed its substitute information prior to the commencement of trial. Leave of the court to amend an information is not required unless it is filed after the trial has commenced. See Practice Book § 36-18. A criminal trial begins with the voir dire of the prospective jurors. *State* v. *Vitale*, 76 Conn. App. 1, 15, 818 A.2d 134, cert. denied, 264 Conn. 906, 826 A.2d 178 (2003). Here, jury selection began November 17, 2004. The substitute information, charging assault in the second degree, was filed on March 13, 2003, more than twenty months prior to the commencement of trial. Permission of the court to file a substitute information was not required, and, therefore, the defendant's claim that the court improperly allowed the state to file the substitute information is without merit.

Furthermore, the defendant had notice of his exposure to increased penal-

## D

The defendant's final sufficiency of the evidence claim is that the state failed to disprove his affirmative defense of self-defense. After the state rested its case and the defendant testified as to his claim of self-defense, the state's only rebuttal witnesses testified as to the arrest of the defendant for his failures to appear in court. The defendant argues that the state failed to disprove his self-defense claim because no further evidence was adduced as to that issue after the defendant's testimony.

"Under our Penal Code . . . a defendant has no burden of persuasion for a claim of self-defense; he has only a burden of production. . . . Once the defendant has done so, it becomes the state's burden to disprove the defense beyond a reasonable doubt. . . . As these principles indicate, therefore, only the state has a burden of persuasion regarding a self-defense claim: it must disprove the claim beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Singleton*, 97 Conn. App. 679, 683, 905 A.2d 725, cert. granted on other grounds, 280 Conn. 949, 912 A.2d 484 (2006).

The defendant cites no legal precedent in support of his contention that the state's evidence to disprove self-defense must be presented after the defendant's testimony raising that claim. In fact, our law is to the contrary. "Whether the defense of the justified use of force, properly raised at trial, has been disproved by the state is a question of fact for the jury, *to be determined from all the evidence in the case and the reasonable*

---

ties for failure to appear by the statutory language itself. General Statutes § 53a-60 (b) explicitly states that assault in the second degree is a felony. General Statutes § 53a-172 provides that a person is guilty of failure to appear in the first degree when he has been charged with a felony and fails to appear and that failure to appear in the first degree is a felony. The text of the statutes themselves provided the defendant with fair notice. See *State* v. *Vakilzaden*, 272 Conn. 762, 771, 865 A.2d 1155 (2005).

*inferences drawn from that evidence.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Wortham,* 80 Conn. App. 635, 640–41, 836 A.2d 1231 (2003), cert. denied, 268 Conn. 901, 845 A.2d 406 (2004).

A review of the record discloses that the evidence presented during the defendant's trial was sufficient to support the jury's finding that the defendant was not acting in self-defense when he slapped, choked and punched Davenport. The jury was free to disbelieve the defendant's version of the events that resulted in the injuries to Davenport. On the basis of the evidence and the reasonable inferences drawn from it, we conclude that the state presented sufficient evidence during the course of the trial to disprove the defendant's claim of self-defense beyond a reasonable doubt.

## II

The defendant next claims that the court's failure to instruct the jury properly on the presumption of innocence, reasonable doubt and self-defense misled the jurors and deprived him of his constitutional rights to due process and a fair trial under the fifth and fourteenth amendments of the United States constitution and article first, § 8, of the Connecticut constitution.[12]

With respect to claims of instructional impropriety, the standard of review to be applied to the defendant's constitutional claim is "whether it is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of

---

[12] The defendant states that his claim encompasses both federal and state constitutional violations. Because he has not briefed a state claim separately, we consider only a claim of a federal constitutional violation. See *State* v. *Mulero,* 91 Conn. App. 509, 514 n.3, 881 A.2d 1039 (2005), cert. denied, 277 Conn. 912, 895 A.2d 792, cert. denied, 549 U.S. 862, 127 S. Ct. 149, 166 L. Ed. 2d 108 (2006).

statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . The charge must be considered from the standpoint of its effect on the jury in guiding [it] to a proper verdict." (Internal quotation marks omitted.) *State* v. *Amado*, 254 Conn. 184, 194, 756 A.2d 274 (2000).

A

We first address the issue of whether the court improperly instructed the jury on the presumption of innocence. Specifically, the defendant claims that the court used language that undermined the presumption of innocence and equated the role of the jury to that of the state in "protecting the innocent" and "protecting society" from the guilty. The defendant argues that the use of the challenged language violated the directive of our Supreme Court in *State* v. *Schiappa*, 248 Conn. 132, 728 A.2d 466 (en banc), cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999).

We conclude that the defendant cannot prevail on this claim. We begin with a review of the jury instruction at issue. After instructing the jury on, inter alia, reasonable doubt and the essential elements of the crimes charged, the court issued the following instruction in its charge on the presumption of innocence: "The state is as much concerned as having innocent people acquitted as having a guilty person punished. But for the safety and well-being of all the citizens of this state and for the protection of life and property within the state, the state is concerned in securing the conviction of persons who have been proven by the evidence to be

guilty of committing a crime beyond a reasonable doubt." The defendant's counsel objected to that language.

The defendant claims that the court's instruction allowed the jury to infer that it could align itself with the state and not hold the state to its strict burden of proof. He argues that the language in that instruction "allowed the jury to infer that it was to first consider the needs of the state before applying the presumption of innocence to the accused." The defendant claims that the challenged instruction was similar to, and had the same effect as, the language found to be improper in *State* v. *Schiappa*, supra, 248 Conn. 132. We disagree.

In *Schiappa*, our Supreme Court explicitly disapproved of the following language in a trial court's jury instruction on the presumption of innocence: "But you must keep in mind that this rule of law is made to protect the innocent and not the guilty." (Internal quotation marks omitted.) Id., 170–71. The court stated that that phrase, when viewed in isolation, gave rise to a danger of juror misunderstanding that only innocent persons should be acquitted, and it directed the trial courts to refrain from using that language in the future. Id., 175. Nevertheless, it concluded that it was not reasonably possible that the jury was misled in light of the totality of the trial court's instructions on the presumption of innocence and reasonable doubt.[13]

It is true, however, as indicated by the defendant, that language nearly identical to the language challenged here was criticized in *State* v. *Wilson*, 71 Conn. App. 110, 800 A.2d 653, cert. denied, 262 Conn. 905, 810

---

[13] We note that the challenged language in this appeal also was used in *Schiappa*, immediately preceding the language that the Supreme Court found to be improper. *Schiappa* did not discuss, and certainly did not criticize, the language claimed to be objectionable here. It also is not disputed that the trial court in this case did not use the prohibited language of *Schiappa*.

A.2d 272 (2002). In *Wilson*, this court determined that the following language, when viewed in isolation, possibly was susceptible of an unacceptable interpretation in light of the rationale of *Schiappa* and suggested that it be omitted from future jury instructions: "The state is as much concerned in having an innocent person acquitted as in having a guilty person convicted." (Internal quotation marks omitted.) Id., 119. Nevertheless, after reviewing the charge as a whole, the *Wilson* court concluded that the trial court had thoroughly informed the jury of the defendant's presumed innocence and that there was no reasonable possibility that the jury could have been misled by the instruction given by the court. The *Wilson* court found that the challenged wording did not violate the defendant's constitutional rights and upheld the defendant's judgment of conviction. Id., 121.

In the present case, the trial court did not use the language found to be improper in *Schiappa*. Although a portion of the challenged instruction here was criticized in *Wilson*, its use did not constitute a violation of the defendant's constitutional rights. It is necessary, therefore, to look to the charge in its entirety to determine whether there is any reasonable likelihood of juror misunderstanding as to the state's burden and the proof necessary for a conviction.

The challenged portion of the instruction was immediately preceded and followed by language underscoring the presumption of innocence and the state's burden of proof. The court instructed the jury that "[t]he state does not require the conviction of innocent people or of any person whose guilt upon the evidence lies in the realm of reasonable doubt" and that "[i]t's the sworn duty of the courts and jurors to safeguard the rights of persons charged with a crime by respecting the presumption of innocence, which the law imputes to every person charged, and by making the state meet its burden

of proving guilt beyond a reasonable doubt. If and when that presumption of innocence is overcome by the evidence—proof beyond a reasonable doubt that the accused is guilty of the crimes charged—then it will be your sworn duty to enforce the law and render such verdicts." These sentences, taken together with the court's repeated explanations of the presumption of innocence and the state's burden of proving the defendant guilty beyond a reasonable doubt, eliminated any reasonable likelihood of juror misunderstanding.[14]

### B

The defendant next claims that he was denied his due process right to a fair trial because the court improperly instructed the jury on reasonable doubt. Specifically, he argues that the instruction was misleading and confusing and, in combination with the improper instruction on the presumption of innocence, increased the probability that the jury did not understand that the state was required to prove the defendant's guilt beyond a reasonable doubt.

The defendant challenges the following portion of the court's instruction on reasonable doubt: "It's the kind of doubt, which in the serious affairs which concern you in your everyday life, you would pay careful heed and attention to, the kind of doubt which, in these important matters, would cause you to hesitate to act." The defendant duly objected to that language at trial. He claims that the instruction "did not connect the hesitation with causation" and that "[i]t did not instruct the jury that the reasonable doubt is the kind of doubt

---

[14] We note that the second sentence of the instruction challenged by the defendant, referring to the concern of the state for the safety, well-being and protection of its citizens, has been challenged unsuccessfully in other appellate cases. See State v. Mejia, 233 Conn. 215, 242 n.20, 658 A.2d 571 (1995); State v. Dubose, 75 Conn. App. 163, 169, 815 A.2d 213, cert. denied, 263 Conn. 909, 819 A.2d 841 (2003).

that in matters of importance causes the jurors to hesitate to act."

The defendant has not indicated how this challenged instruction, when viewed in its entirety with the remainder of the charge on reasonable doubt, diminished the state's burden of proof. Furthermore, language very similar to the "hesitate to act" language in this instruction was examined and not found to be improper in *State* v. *Martinez*, 95 Conn. App. 162, 192–93, 896 A.2d 109, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006), and *State* v. *Otero*, 49 Conn. App. 459, 470–73, 715 A.2d 782, cert. denied, 247 Conn. 910, 719 A.2d 905 (1998). We do not see any meaningful difference between the instructions in those cases and the instruction in the present case. With respect to the defendant's claim that the court did not connect the hesitation to act with causation, that argument is refuted by the clear and unambiguous wording of the instruction itself.

Finally, the argument that the instruction on reasonable doubt, when taken together with the instruction on presumption of innocence, increased the probability of juror misunderstanding, is without merit. "[W]e disagree with the defendant's contention that a combination of two challenged instructions becomes more than the sum of their individual parts and results in a dilution of the state's burden of proof." *State* v. *Torres*, 82 Conn. App. 823, 837, 847 A.2d 1022, cert. denied, 270 Conn. 909, 853 A.2d 525 (2004). We conclude that the charge, when read in its entirety, fairly presented the case to the jury under the established rules of law.

C

The defendant's final claim of an improper jury instruction is addressed to the court's charge on self-defense. He argues, inter alia, that the court's instruction favored the state and prejudiced him, that the court failed to instruct the jury that he must be found not

guilty if the state failed to disprove his claim of self-defense and that the court improperly instructed the jury on the duty to retreat. We disagree.

The defendant concedes that his claim was not preserved properly at trial.[15] He now seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) Id., 239–40.

We will review the defendant's claim because he has satisfied the first two prongs of *Golding*, as the record is adequate for review and the alleged violation is of constitutional magnitude. "[I]t is well established that [a]n improper instruction on a defense, like an improper instruction on an element of an offense, is of constitutional dimension." (Internal quotation marks omitted.) *State* v. *Montanez*, 277 Conn. 735, 749, 894 A.2d 928 (2006). The defendant nevertheless cannot prevail on his claim, for the reasons set forth more fully hereafter, because he has failed to satisfy the third prong of *Golding*.

---

[15] Practice Book § 42-16 provides: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. The exception shall be taken out of the hearing of the jury."

The court's instruction to the jury as to the defendant's claim of self-defense was clear, thorough and comprehensive.[16] The argument that the instruction

[16] The court's instruction on self-defense was as follows: "As to this charge in the information, assault in the second degree, the defendant by his own testimony has raised the issue of self-defense. I will tell you that self-defense is a complete defense if you find that it has in fact been established in this case.

"Self-defense is a means by which the law justifies the use of force that would otherwise be illegal. Once self-defense is raised in a case, the state has the obligation to disprove the defense to you beyond a reasonable doubt. Under our law, a person is justified in using reasonable force upon another when he reasonably believes that such force is necessary to protect himself from the use of or imminent use of force.

"In other words, self-defense is a legal defense to the use of force which would otherwise be criminal. Let me define that term for you in the legal sense here.

"I want you to set aside any common or colloquial meaning you have heard before or your common colloquial understanding of the term. Our Penal Code provides as follows: A person is justified in using reasonable force upon another person to defend himself from what he reasonably believes to be the use of or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose.

"Once again, the defendant does not have to prove that he acted in self-defense, but if it is raised in the case, the state has the obligation to disprove the defense beyond a reasonable doubt. What this statute does is, it focuses on the person claiming self-defense. It focuses on what he reasonably believed under the circumstances. And that presents a question of fact for you.

"In other words, what is important is what the defendant reasonably believed under the circumstances as they existed. The test for the degree of force in self-defense is both a subjective and objective test, meaning [that] it has elements of both.

"Self-defense requires you to measure the justifiability of the defendant's actions on the subjective perspective. That is, what the defendant reasonably believed under the circumstances presented in the case, and, on that basis, what he perceived the circumstance to be.

"The law, however, requires that this belief must have been reasonable and not irrational or unreasonable under the circumstance. That is, would a reasonable person in the defendant's circumstance have reached that belief? That's the objective part of the test. So, it's both a question of what his belief was and whether that belief was reasonable.

"In this case, if you find proven beyond a reasonable doubt that the victim was not using or about to use physical force upon this defendant, and if you further find proven beyond a reasonable doubt that the defendant had no reasonable belief that the victim was using or about to use such force

favored the state and prejudiced the defendant by diluting the state's burden and undermining the presumption of innocence is without merit. The court stated that "[o]nce self-defense is raised in a case, the state has the obligation to disprove the defense to you beyond a reasonable doubt," that "the defendant does not have to prove that he acted in self-defense, but if it is raised in the case, the state has the obligation to disprove the defense beyond a reasonable doubt" and that the jury was to reject the claim of self-defense "if you find proven beyond a reasonable doubt that the victim was not using or about to use physical force upon this defendant, and if you further find proven beyond a reasonable doubt that the defendant had no reasonable belief that the victim was using or about to use such force upon him . . . ." In the court's instruction on self-defense, it repeated six times that it was the state's burden to disprove the claim of self-defense beyond a reasonable doubt. Viewing the charge as a whole, it was not reasonably possible that the jury was misled as to the state's burden of proof and the defendant's presumption of innocence with respect to his claim of self-defense.

The defendant also claims that the court improperly instructed the jury on self-defense because it failed to

upon him, then you would, under those conditions, reject the defense of self-defense.

"Remember, however, the burden remains on the state to disprove the defense beyond a reasonable doubt.

"One additional instruction with regard to self-defense. Generally, the defense of self-defense is not available to one who is the initial aggressor. The law of self-defense does not apply the right of an attack in the first instance. By definition, it means the defensive use of force. A person claiming this defense must act honestly and conscientiously under the circumstances. He must not provoke or bring the attack upon himself in order to provide an excuse to attack someone else. However, the defendant's use of force may still be justified if you find [that] he withdrew from the encounter and made it clear to the other person that he was retreating from the use of force.

"In summary, therefore, you've heard all of the evidence in the case with reference to the defendant's claim of self-defense.

"As I said to you, the state must disprove that defense beyond a reasonable doubt. That's the charge on self-defense."

charge the jury that it would have to find him not guilty if the state failed to prove that (1) he did not believe that he was in imminent danger and that the use of force was not necessary to protect himself, (2) he did not have reasonable grounds to believe that he was in imminent danger of death or injury, (3) the force was unreasonable, (4) acting with intent to cause physical injury or death to another person, he provoked the use of physical force by such other person, (5) he was the initial aggressor and did not attempt to withdraw or (6) he was engaged in mutual combat not specifically authorized by law.

The defendant's argument fails because the court did instruct the jury on those elements on which evidence had been presented to raise the issue, and it was not obligated to instruct the jury on those elements on which no evidence was presented to support such an instruction. The record reflects that the court instructed the jury on all of the elements except provoking a victim to use force with intent to cause injury to that person and engaging in mutual combat. Nothing had been presented to the jury that would have justified instructions in those areas. "The court . . . has a duty not to submit to the jury, in its charge, any issue upon which the evidence would not reasonably support a finding." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 93 Conn. App. 739, 753, 890 A.2d 591 (2006), appeal dismissed, 281 Conn. 817, 917 A.2d 959 (2007).

The defendant next claims that the instruction was improper because the court failed to charge the jury that it was required to find him not guilty if the state failed to disprove his claim of self-defense. Citing *State* v. *Montanez*, 71 Conn. App. 246, 801 A.2d 868, cert. denied, 261 Conn. 935, 806 A.2d 1069 (2002), the defendant argues that the court's failure to instruct the jury as to the consequence of the state's failure to meet its

burden of proof violated his constitutional due process rights.

In *Montanez,* the trial court properly instructed the jury that the state had the burden of disproving the defense of justification or self-defense beyond a reasonable doubt. Id., 250–51. The defendant argued, however, that the trial court never instructed the jury that self-defense was a complete defense to any of the crimes charged and that he must be found not guilty unless the state disproved the claimed justification. Id., 252. This court held that "part of a legally adequate instruction as to the defense should convey that the *effect of a finding that the state has failed to disprove the defense* requires the jury to render a verdict in the defendant's favor. The court must unambiguously instruct the jury that it must find the defendant not guilty if it finds that the state has not disproved the defense." (Emphasis in original.) Id., 253.

Here, the court in its instruction to the jury on self-defense specifically stated that "self-defense is a complete defense . . . ." Further, the court repeatedly instructed the jury that it was the state's burden to disprove the defendant's claim of self-defense beyond a reasonable doubt. The court did not specifically state, however, that the jury was required to find the defendant not guilty if the state failed to carry its burden.

Significantly, the court instructed the jury that the court was providing a summary sheet of each of the crimes charged in the information and the essential elements of those crimes that had to be proved beyond a reasonable doubt. The court noted that the summary sheets had been reviewed by counsel and that they approved of them. Those court exhibits were provided to the jury at the time of deliberation. The summary sheets, after describing the elements of assault in the second degree and the lesser included offense of assault

in the third degree, contained the following instruction: "Further, you must find that this is not a case of self-defense, as I have defined that term for you, in order to find the defendant guilty." Accordingly, we conclude that the instructions provided to the jury, when considered in their entirety, met the requirements set forth in *State* v. *Montanez*, supra, 71 Conn. App. 246.

The defendant's final claim with respect to the jury charge on self-defense is that the court improperly included an instruction on the duty to retreat. The defendant argues that the duty to retreat applies only when a defendant is charged with the use of deadly force and avails himself of the defense of self-defense. We note, however, that the court did not instruct the jury with respect to the duty to retreat when using deadly physical force, but rather instructed the jury on the availability of the defense of self-defense when an accused is the initial aggressor.

In the present case, testimony was presented that indicated that the defendant was the initial aggressor. Although he testified otherwise, the jury nevertheless was entitled to believe Davenport when she testified that the defendant grabbed her first and began slapping her face. An initial aggressor still may avail himself of the defense of self-defense if he withdraws from the encounter and effectively communicates to such other person his intent to do so. See General Statutes § 53a-19 (c).[17] The court instructed the jury in this case that

[17] General Statutes § 53a-19 (c) provides: "Notwithstanding the provisions of subsection (a) of this section, a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

"[g]enerally, the defense of self-defense is not available to one who is the initial aggressor. . . . However, the defendant's use of force may still be justified if you find [that] he withdrew from the encounter and made it clear to the other person that he was retreating from the use of force." That instruction, when read in its entirety, was proper; it followed the statutory language set forth in § 53a-19 (c).

The judgment is affirmed.

In this opinion the other judges concurred.