## STATE OF CONNECTICUT *v.* JASON B.[1]
### (AC 28580)

McLachlan, Robinson and Hennessy, Js.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued September 11—officially released November 25, 2008

*Michael Zariphes*, special public defender, for the appellant (defendant).

*Adam E. Mattei*, special deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Joseph J. Harry*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Jason B., appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a). On appeal, the defendant claims that (1) the evidence was insufficient to sustain his conviction and (2) the court's failure to grant his motion for a new trial was a violation of his due process rights. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, Y, and the defendant were married

in September, 1999, and had a daughter, A, in August, 2002. Y and the defendant met while they were both members of the Marine Corps. Y filed for divorce in October, 2005, and their divorce became final in February, 2006.

On February 21, 2006, the defendant repeatedly contacted Y and requested to meet with her. They arranged to meet at a Dunkin' Donuts that evening but eventually met at a Borders bookstore at about 8:30 p.m. They later walked to a nearby Boston Market for dinner, where the defendant asked Y to have sex with him. She refused, and he asked her to join him in his car for a cigarette. She got into the car, where the defendant renewed his requests for sex, which Y continued to turn down. She tried to get out of the car at least once, but the defendant pulled her back in by the arm. The defendant then informed Y that he had withdrawn all of the money from their joint bank account, approximately $6000, which was all of Y's savings. He also told her that he was going to make her life very difficult, that he was going to take A, that she would never see A again and that he was going to hurt everyone that she knew. He told Y that if she slept with him, he would give back the money and leave her alone. Y again tried to get out of the car, but the defendant pulled her back in.

The defendant then drove off with Y in the car, and Y began screaming out the window; at some point, he had locked all of the doors. He eventually stopped the car in a dark, wooded area with no houses nearby. He climbed from the driver's side to the passenger's side of the car, where Y was sitting, and began touching her between her legs. Y testified that she tried to fight him off but that she was unable to because he had her left arm pinned behind her head and he was stronger than she was. At one point, he also took her cellular telephone from her and threw it in the backseat. He also repeatedly put his hand over her mouth to the point

where she could not breathe, and he stopped only when she told him she would not fight him any more.[2]

The defendant eventually climbed off of Y, started the car and told her he would bring her home. Instead, while he was driving, he unzipped his pants, removed his penis and ordered Y to perform fellatio. She began to do so but began to feel sick and so asked the defendant to stop the car. He stopped the car, and she opened the car door and vomited on the side of the road. The defendant started the car again and continued to drive; Y did not know where she was or what town she was in. Y asked to use a bathroom, and the defendant stopped the car again and she got out to urinate. Y returned to the car and the defendant instructed her to lie down as he reclined the seat. The defendant then began touching Y's vagina, asking her if she liked it. She told him she wanted him to stop, and he said: "No you don't." He took off his belt, flexed it and ordered her into the backseat of the car. They both got into the backseat, and the defendant penetrated the victim's vagina and anus with his penis. After he stopped, the defendant returned to the driver's seat of the car and drove away. He eventually returned to the Boston Market, where Y had left her car, and dropped her off. Y got into her car and drove home. Y's mother, who was at home, called 911, and, after Y was taken to a hospital, she told the emergency room physician that her former husband had forced her to have sex with him. Additional facts will be set forth where necessary.

I

The defendant claims that the court erred in failing to grant his motion for a judgment of acquittal because there was insufficient evidence to convict him of (1) sexual assault in the first degree and (2) unlawful

---

[2] The defendant also forced Y to swallow a valium pill and to smoke marijuana against her will.

restraint in the first degree. He made two motions for a judgment of acquittal, one after the state had rested its case and the other after the defense had presented its evidence. The court denied both of the defendant's motions. We begin by setting forth our standard of review for sufficiency of the evidence claims.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proven beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all of the elements of the crime charged beyond a reasonable doubt. . . .

"[W]e do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Rather, we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Pauling*, 102 Conn. App. 556, 563–64, 925 A.2d 1200, cert. denied, 284 Conn. 924, 933 A.2d 727 (2007).

A

The defendant first challenges the sufficiency of the evidence to support his conviction of sexual assault in the first degree under § 53a-70 (a) (1).[3] In particular, he argues that the state failed to prove the element of use of force because there was no physical evidence that he had put his hands on the victim or physically or mentally abused her and that Y's testimony in this regard concerned acts that were physically impossible.

The issue of whether force was used presents a question of fact for the jury. See *State* v. *Coleman*, 52 Conn. App. 466, 469, 727 A.2d 246, cert. denied, 249 Conn. 902, 732 A.2d 776 (1999). "[N]othing . . . in our law, suggests that proof of physical violence is necessary to establish that the sexual intercourse or contact has been compelled by the use of force or a threat of the use of force." (Internal quotation marks omitted.) *State* v. *Mahon*, 97 Conn. App. 503, 510, 905 A.2d 678, cert. denied, 280 Conn. 930, 909 A.2d. 958 (2006). Furthermore, "we have consistently held that one also may be guilty of sexual assault in the first degree if one uses one's physical size or strength to threaten another to submit to sexual intercourse and that such threat may be expressed or *implied*." (Emphasis in original.) Id., 512.

We believe that there was sufficient evidence of the use of force for the jury to have concluded that the defendant was guilty of sexual assault in the first degree. Although the record does not reveal the height or weight

---

[3] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or third person . . . ."

of the defendant or the victim, Y testified that the defendant was stronger than she was.[4] The jury reasonably could have concluded that the defendant's removal of his belt, his flexing of it and his ordering Y into the backseat of the car satisfied the use of force requirement. In fact, Y testified that she believed at that moment that he was going to kill her and leave her in the wooded area. In addition, the victim and the emergency room physician testified that there was dried blood on her nose, which was consistent with her story that the defendant had his hand over her mouth and nose for an extended period of time. Accordingly, the defendant's claim that the evidence was insufficient to sustain his conviction of sexual assault in the first degree must fail.[5]

B

The defendant also challenges the sufficiency of the evidence to support his conviction of unlawful restraint in the first degree under § 53a-95 (a).[6] The defendant

[4] Although both Y and the defendant were former Marines, the jury reasonably could have credited Y's testimony that the defendant was stronger than she was; the fact that both were former Marines does not make Y's testimony not credible.

[5] The defendant's other argument is that it would have been physically impossible for him to force the victim to perform fellatio while he was driving a vehicle with a stick shift "unless the defendant had three arms." During oral argument, the defendant's attorney attempted to further substantiate the physical impossibility claim by adding into the mix the acts of throwing her telephone into the backseat and forcing her to take a valium pill. The fatal flaw in this argument is that the victim never alleged that the defendant performed all of these acts *simultaneously*; the defendant in fact could have performed all of these acts consecutively over a short period of time. In addition, it is not clear if the jury found the defendant guilty of having committed oral, anal or vaginal sex, and the defendant's physical impossibility argument pertains only to the circumstances surrounding the oral sex.

[6] General Statutes § 53a-95 (a) provides: "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury."

claims that the state failed to prove beyond a reasonable doubt that he restrained Y against her will because Y voluntarily accompanied him into the vehicle, he allowed Y to both open the car door to vomit and to leave the car to urinate, and Y at no point called 911.

The jury was free to credit the testimony of Y over the defendant's version of the events. Here, construing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury could reasonably have found that Y tried to get out of the car on several occasions, but each time the defendant grabbed her by the arm and pulled her back. Additionally, Y testified that she did not attempt to run away when the defendant let her out of the car to urinate because "there was nowhere to go," as they were parked in a remote and unfamiliar wooded area. Y also testified that she struggled against the defendant while he held his hand over her face to prevent her from breathing, pinned her arm behind her head and climbed on top of her against her will. The jury could have reasonably found the defendant guilty of unlawful restraint in the first degree on these facts.

## II

The defendant next claims that the court abused its discretion in denying his motion for a new trial. The defendant filed a written motion for a new trial, pursuant to Practice Book §§ 42-53 and 42-54, on October 13, 2006, alleging that he was constitutionally entitled to a new trial because the court denied him a requested bathroom break during the playback of certain testimony. As a result of the court's denial, the defendant claims that he had no choice but to take a paper cup from the defense table, unzip his pants and attempt to urinate into the cup. The defendant alleges that these actions prejudiced the jury to such an extent that he

should be given a new trial. We decline to review the defendant's claim due to an inadequate record.

A hearing was held on the defendant's motion on October 23, 2006, and the court, *Rodriguez, J.,* denied the defendant's motion for a new trial. The defendant asserts that it was judicial misconduct for the court to deny him the opportunity to use the bathroom, and, as a result, he was prejudiced to the extent that he was denied his due process right to a fair trial because the jury witnessed his attempt to urinate into a cup under the defense table and inevitably held this against him.

"A motion for a new trial is addressed to the sound discretion of the trial court and is not to be granted except on substantial grounds." (Internal quotation marks omitted.) *State* v. *Newsome,* 238 Conn. 588, 628, 682 A.2d 972 (1996). "The general rule in this state is that a mistrial should be granted only when it is apparent to the court that some occurrence during the trial has so prejudiced a party that he can no longer receive a fair trial . . . ." (Internal quotation marks omitted.) *State* v. *Boone,* 15 Conn. App. 34, 48, 544 A.2d 217, cert. denied, 209 Conn. 811, 550 A.2d 1084 (1988).

We are unable to review the defendant's claim because we are unable to discern from the record what the jury did or did not witness. The present record is devoid of competent evidence that the jury was aware that the defendant unzipped his pants and attempted to urinate into a cup while sitting at the defense table.[7] No hearing was held on the issue, and the jury was not canvassed to determine what, if anything, it saw. We cannot speculate as to what the jury might have seen.

---

[7] The defendant's attorney himself admitted at the hearing on the motion for a new trial that it was unclear even to him what exactly the jury had seen. He stated: "[I]t's pretty clear to me that the jury *had an indication or saw* what occurred. I don't know what they saw. I don't know what they saw. All I know is that the defendant clearly prejudiced himself as a result of having to use the facilities." (Emphasis added.)

The record must demonstrate that the allegedly prejudicial actions took place in front of the jury for an allegation of judicial misconduct even to be considered. See *State* v. *Colon*, 272 Conn. 106, 368, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); see also *State* v. *Lopez*, 93 Conn. App. 257, 271, 889 A.2d 254 (2006), aff'd, 281 Conn. 797, 917 A.2d 949 (2007). Therefore we decline to review this claim, as it was the defendant's responsibility to provide an adequate record for review on appeal. See Practice Book §§ 60-5 and 61-10.

The judgment is affirmed.

In this opinion the other judges concurred.