STATE OF CONNECTICUT *v.* REGINALD JOSEPH
(AC 28679)

Lavine, Robinson and Berdon, Js.

Argued April 14—officially released August 11, 2009

*Matthew D. Popilowski*, special deputy assistant public defender, with whom was *Elizabeth M. Inkster*, senior assistant public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *James M. Bernardi*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

BERDON, J. The defendant, Reginald Joseph, appeals from the judgments of conviction, rendered after a jury trial of one count of larceny in the third degree in violation of General Statutes §§ 53a-119 and 53a-124 (a) (2), and two counts of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a). The court, *Hon. Martin L. Nigro*, judge trial referee, sentenced the defendant to an effective term of eight years imprisonment. On appeal, the defendant claims that (1) the evidence was insufficient to sustain his conviction of unlawful restraint in the first degree; (2) the court improperly failed to instruct the jury on reckless endangerment in the second degree, which he claims is a lesser offense included within unlawful restraint in the first degree; (3) the court improperly instructed the jury on the statutory definition of intent; and (4) the court improperly joined in one trial the charges against him, which arose from two unrelated incidents. We agree with the defendant's second claim and, therefore, reverse the judgment in the second case with respect to the defendant's conviction of two counts of unlawful restraint in the first degree. With respect to the defendant's conviction of larceny in the third degree in the first case, we conclude that the defendant

has failed to demonstrate substantial prejudice as a result of the joinder, and, therefore, we affirm that judgment.

Evidence of the following facts was presented at trial. On December 30, 2005, Jolanta Pierce, the manager of the Toys "R" Us store in Danbury, called Richard Fernandez, the district loss prevention manager, to investigate a theft of merchandise. When Fernandez arrived at the Danbury store, he and Pierce viewed a videotape that allegedly showed[1] the defendant, an employee of the store, removing a large amount of electronics merchandise from the store without paying for it. Fernandez called the defendant, explained the content of the tape and asked the defendant to return to the store and do his best to recover the merchandise that he took. The defendant admitted that he had removed merchandise from the store without paying for it and agreed to return to the store.

Upon his arrival at the store, the defendant returned approximately $1450 worth of merchandise, which was scanned and determined to be part of the merchandise that had been taken that day. He also admitted that he had stolen other merchandise, valued by Fernandez at approximately $12,000, which he already had turned over to individuals in Bridgeport to sell. In a signed statement, which was introduced into evidence, the defendant admitted that, with the help of others, he had stolen from the store between $15,000 and $17,000 worth of merchandise. Fernandez testified that the defendant admitted to stealing approximately $3000 worth of merchandise on December 29, 2005, and approximately $13,000 worth of merchandise on December 30, 2005. The December 30 incident is the incident with which the defendant was charged. Thereafter, the police arrested the defendant, and he was charged with larceny in the third degree.

---

[1] The videotape was never introduced at trial because it was lost.

In an unrelated incident, on January 31, 2006, at approximately 9 p.m., Melinda Mock and her twenty-two year old son, Joseph Baker, returned to Mock's condominium in Norwalk. Mock and the defendant had been involved romantically, and the defendant kept some of his personal effects at her condominium. As Mock and Baker approached Mock's deck, the defendant confronted them and poured gasoline on himself. The events that followed were disputed at trial.

On the night of that incident, Baker signed a statement, which was admitted into evidence, indicating that (1) the defendant poured gasoline on himself and stated, "you think I'm playing"; (2) Baker heard the lighter make a clicking noise but did not see a flame; (3) the defendant pulled Mock and rubbed her hand on his chest; (4) the defendant poured gasoline on Baker and Mock; and (5) Baker "squared up with [the defendant] and then [he] was scuffling with him . . . . After [they] wrestled for a while then [Mock] broke it up . . . ." Mock also signed a statement that night, which was admitted into evidence, indicating that (1) she saw the defendant come from "nowhere"; (2) the defendant held a twisted newspaper and a lighter "as if he was going to light himself up"; (3) she was "pushing [the defendant] away"; and (4) the defendant "went towards [her] son and grabbed him . . . ." The next day, in connection with this incident, the Norwalk police department arrested the defendant on charges of attempt to commit assault in the first degree and unlawful restraint in the first degree.

At trial, Baker testified that his memory of the January 31, 2006 incident was unclear. Although at times his testimony was self-contradictory, he clearly stated that the defendant did not pull Mock or pour gasoline on her. He also described his encounter with the defendant as a fight. Mock's trial testimony also differed from her January 31 statement. She testified that she did not

remember the incident well, the defendant poured gasoline on himself and not on her, she pushed him in an attempt to stop him from hurting himself and she did not want him to be prosecuted.

In connection with the December 30, 2005 incident, the jury found the defendant guilty of larceny in the third degree. In connection with the January 31, 2006 incident, the jury found the defendant not guilty of two counts of attempt to commit assault in the first degree and guilty of two counts of unlawful restraint in the first degree. This appeal followed.

I

The defendant claims that the evidence adduced at trial was insufficient to sustain his conviction of unlawful restraint in the first degree.[2] "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Jason B.*, 111 Conn. App. 359, 363, 958 A.2d 1266 (2008), cert. denied, 290 Conn. 904, 962 A.2d 794 (2009).

"A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury." General Statutes § 53a-95 (a). Unlawful restraint in the first degree requires that the defendant had the specific intent to restrain the victim. *State* v. *Youngs*, 97 Conn. App. 348, 363, 904 A.2d 1240,

---

[2] After the trial, the defendant preserved this claim by moving for a judgment of acquittal. See *State* v. *Jason B.*, 111 Conn. App. 359, 363, 958 A.2d 1266 (2008), cert. denied, 290 Conn. 904, 962 A.2d 794 (2009).

cert. denied, 280 Conn. 930, 909 A.2d 959 (2006). " 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. . . ." General Statutes § 53a-91 (1).

The defendant argues that the state did not present sufficient evidence from which the jury could have found beyond a reasonable doubt that he intentionally restrained Mock and Baker. The defendant argues that to prove restraint, the state relied on the conflicting testimony of Baker and Mock, which, even if accepted, proved only that he poured gasoline on himself and that any contact between himself and Baker and Mock was incidental to his conduct toward himself. Notwithstanding the defendant's argument, the statements of Mock and Baker from the night of the incident indicated that (1) the defendant pulled Mock and rubbed gasoline on her; (2) the defendant grabbed Baker; and (3) Baker and the defendant wrestled. Reviewing the evidence in the light most favorable to sustaining the verdict, we conclude that the evidence was sufficient for the jury to conclude beyond a reasonable doubt that the defendant intentionally restrained Mock and Baker. See, e.g., *State* v. *Drake*, 19 Conn. App. 396, 400–401, 562 A.2d 1130 (1989) (large male defendant restrained female victim where he, appearing " 'desperate,' " entered her home and told her to hang up telephone and that he was running from police); *State* v. *Pauling*, 102 Conn. App. 556, 565–66, 925 A.2d 1200 (defendant restrained victim where he slapped her, struggled with her, grabbed her by throat and threw her onto bed), cert. denied, 284 Conn. 924, 933 A.2d 727 (2007). Accordingly, we conclude that the evidence adduced at trial was sufficient to sustain the defendant's conviction of two counts of unlawful restraint in the first degree.

II

The defendant argues next that the court improperly failed to instruct the jury on reckless endangerment in the second degree as a lesser offense included within unlawful restraint in the first degree. We agree.

Before we reach the merits of the defendant's claim, we must address the state's assertion that we should decline to review this claim because the defendant abandoned it. The state argues that the defendant abandoned his request for a jury instruction on reckless endangerment in the second degree because he did not ask the court to state on the record a ruling on the request. It is well established, however, that a party preserves its right to challenge on appeal a jury instruction by submitting a written request to charge or by taking an exception to the court's instruction immediately after it is given. *State* v. *Gonzalez*, 106 Conn. App. 238, 244, 941 A.2d 989, cert. denied, 287 Conn. 903, 947 A.2d 343 (2008). A party abandons a request for a jury instruction by expressly withdrawing the request or by acquiescing to a charge that does not conform with the request. See *Stuart* v. *Stuttig*, 63 Conn. App. 222, 227, 772 A.2d 778 (2001) (after filing written request to charge, defendant abandoned claim of improper instruction by stating to judge that request was not an issue). The state fails to cite any authority in support of the premise that a party abandons the right to challenge on appeal a jury instruction if the court does not state on the record its ruling on the request for the instruction. In the present case, although the defendant did not except to the charge, the record does not indicate that he acquiesced to the charge or withdrew his request. Therefore, we cannot conclude that the defendant abandoned his request.[3]

---

[3] This conclusion does not address whether the defendant properly requested an instruction on reckless endangerment in the second degree. Under *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), we consider along with the merits of the defendant's claim, the propriety of

We now address the merits of the defendant's claim that he was entitled to a jury instruction on reckless endangerment in the second degree as a lesser offense included within unlawful restraint in the first degree. "There is no fundamental constitutional right to a jury instruction on every lesser included offense . . . rather, the right to such an instruction is purely a matter of our common law. . . . In *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980), our Supreme Court determined that a lesser included offense instruction should be given when: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." (Citation omitted; internal quotation marks omitted.) *State* v. *Rudd*, 62 Conn. App. 702, 705–706, 773 A.2d 370 (2001).

A defendant is entitled to an instruction on a lesser included offense, if, and only if, the four *Whistnant* factors are satisfied. *State* v. *Herring*, 210 Conn. 78, 104, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). "In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant*, supra, [179 Conn. 588], we view the evidence in the light most favorable to the defendant's request for a charge on a lesser included offense.

his request for the instruction. Our conclusion here states only that the defendant did not abandon his right to challenge on appeal an otherwise properly requested instruction solely on the ground that the record does not indicate that the court expressly denied his request.

. . . [T]he jury's role as fact-finder is so central to our jurisprudence that, in close cases, the trial court should generally opt in favor of giving an instruction on a lesser included offense, if it is requested. . . . Otherwise the defendant would lose the right to have the jury pass upon every factual issue fairly presented by the evidence." (Internal quotation marks omitted.) *State* v. *Faria*, 47 Conn. App. 159, 178, 703 A.2d 1149 (1997), cert. denied, 243 Conn. 965, 707 A.2d 1266 (1998).

"A proposed instruction on a lesser included offense constitutes an appropriate instruction for purposes of the first prong of *Whistnant* if it complies with Practice Book § 854 [now § 42-18]. . . . Practice Book § 42-18 (a) provides in relevant part: When there are several requests, they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, and the evidence to which the proposition should apply." (Internal quotation marks omitted.) *State* v. *Rudd*, supra, 62 Conn. App. 706. Our Supreme Court has stated that "[a]lthough strict compliance with the provisions of § 42-18 is certainly the least perilous method of satisfying *Whistnant*'s first prong, failure to do so is not, by itself, fatal to the defendant's claim. We have deemed the first prong of *Whistnant* satisfied when the record indicates that the trial court knew the precise point to which the defendant wished to call attention." (Internal quotation marks omitted.) *State* v. *Smith*, 262 Conn. 453, 466, 815 A.2d 1216 (2003). Generally, however, a request for a jury instruction must be submitted in writing. See, e.g., *State* v. *Rudd*, supra, 706–707; see also *State* v. *Jacobs*, 194 Conn. 119, 128, 479 A.2d 226 (1984), cert. denied, 469 U.S. 1190, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985).

In the present case, with respect to the two counts of assault in the first degree of which the defendant was acquitted, the defendant submitted a written request to charge the jury on reckless endangerment in the second degree. At the charging conference, the defendant also

orally requested that the reckless endangerment in the second degree instruction be given with respect to the two counts of unlawful restraint in the first degree. The record reflects an in-depth discussion of this issue between the defendant's counsel, the prosecutor and the court.[4] The record also reflects that the defendant's

---

[1] The record reflects that the following colloquy took place at the charging conference:

"[Defense Counsel]: And, I have a backup position, Your Honor, which is that reckless endangerment in the second degree should be given as . . . a lesser included offense of counts two—no, I'm sorry, of counts three and four of unlawful restraint in the first degree, and I know [that] even though it is not under the same group of statutes, in other words, it is in a different section, there is no element in reckless endangerment in the third degree which is not a subsumed element of unlawful restraint. Unlawful restraint requires proof that the defendant restrained someone, which is, of course, engaging in conduct, under circumstances which expose the person restrained [to a] substantial risk of physical injury. And, in reckless endangerment in the second degree, it simply requires that the state prove, recklessly engaging in conduct, which is, of course, a subsumed state of mind that creates a risk of physical injury to another person. So, a risk of physical injury is obviously less than a substantial risk of physical injury. So, our claim is that it would also—reckless endangerment in the second degree would also be a lesser included offense of counts three and four, which charge unlawful restraint in the first degree.

"The Court: So, you're claiming it is a lesser included of the charge of unlawful restraint?

"[Defense Counsel]: Yes, Your Honor, I am.

"[The Prosecutor]: Well, Your Honor, I would claim once again that just looking at them, you could commit a crime of unlawful restraint without having committed the crime of reckless endangerment. The permutations of how you can commit both crimes without having committed the other are legion.

"[Defense Counsel]: The factual basis, Your Honor, that I would claim is that they might find that the conduct was less than restraint, but, that it exposed those two to a substantial risk of—to a risk of physical injury by the reckless engaging in the tussling or the reckless engaging in the touching of the hand to the chest or advancing on someone.

"[The Prosecutor]: Well, in the—case, Your Honor, if you don't look at the facts that they were—in resolving the inquiry posed by *Whistnant* requirement number two, I think clearly they indicate [that] you only look at the pleadings, not at the facts of the individual cases before the court, and in so doing, you see whether or not a particular crime could be committed without having first having to make—

"The Court: Yes, I think—

"[The Prosecutor]:—otherwise it just pushes the charging function—

"The Court:—the unlawful restraint crimes don't involve physical injury, I don't think.

"[Defense Counsel]: Your Honor, it, I believe, unlawful restraint in the first degree requires exposing [a person] to a substantial risk of physical injury. I think the test is on the second prong that reckless endangerment in the second degree not involve an element—

"The Court: Of intent?

"[Defense Counsel]:—that is not found in unlawful restraint in the first degree, and what I am saying is that the second prong is met, and my discussion of the facts of the case are that it was just to lay out the factual basis that's required in a request to charge. It is not to say that that's the only way that it is decided; I'm just saying that, I'm just adding that additionally as the factual basis.

"The Court: In other words, what you're advocating is [that] it is impossible to commit unlawful restraint without having committed the elements of the crime of—

"[Defense Counsel]: Right, reckless endangerment.

"The Court:—of reckless endangerment.

"[The Prosecutor]: I would disagree with that, Your Honor, for the same reason that the court reasoned that you could commit the crime of attempted assault in the first degree without having committed reckless endangerment. The same logic applies to both situations.

"The Court: Yes, what is your distinction? Do you have a case on point or is it just your logic?

"[Defense Counsel]: No, Your Honor, I've never even seen a request to charge in this instance. Just looking at the elements, I don't think there's a difference. I don't have a case on point, however, other than also citing to the court that it is a subsumed intent and a subsumed result.

"The Court: All right, now, what are the elements in reckless endangerment?

"[Defense Counsel]: I'm sorry, I just—

"The Court: Is that my book or yours?

"[Defense Counsel]: The elements of reckless endangerment are [that] a person is guilty of reckless endangerment in the second degree when he (1) recklessly engages in conduct and (2) creates a risk of physical injury to another person.

"The Court: So, you have to be—you cannot commit assault in the first degree—you cannot commit unlawful restraint without recklessly—

"[Defense Counsel]: Right.

"The Court:—risking danger and without—

"[Defense Counsel]: Without recklessly engaging in conduct—without engaging in conduct. Now, whether that's purposeful or what? Reckless would be a subsumed intent to that, and then exposing someone to a substantial risk of physical injury is creating a risk of physical injury [and] is subsumed in that.

"[The Prosecutor]: I don't think the question is whether or not it is subsumed intent, Your Honor, you can always argue that it is subsumed intent. A breach of the peace probably would be a lesser included of every crime in the book. The fact of the matter is that you can't unlawfully restrain someone intentionally without having to recklessly engage in conduct which creates a risk of physical injury to them theoretically. That's all that is required. And, for the same reasons assault in the first degree is not a—

counsel clearly argued the legal basis of her request,[5] the court summarized to the parties its understanding of the defendant's argument, the state clearly argued its opposition to the defendant's request and the court stated that it would "take [the arguments] under consideration . . . ." Under these circumstances, it is clear that the court was made aware of the legal and factual basis of the defendant's request. See *State* v. *Smith*, supra, 262 Conn. 466. We note that in most situations, in order to satisfy the first prong of *Whistnant*, a party must submit the request in writing. In this case, however, we conclude that this requirement was excused because the court expressly stated that it would take "under consideration" the arguments on this issue. See *State* v. *Herring*, supra, 210 Conn. 105 n.25 (first prong of *Whistnant* satisfied where court stated that oral request sufficed). Therefore, under these circumstances, we conclude that the defendant's request satisfied the first prong of *Whistnant*.

attempted assault in the first degree is not a lesser of attempted murder or so forth—they just ruled that reckless—the case says, reckless endangerment is not a lesser included of attempted murder. Your Honor is not hearing anything different than what the Appellate Court heard with regard to reckless endangerment and attempted murder.

"The Court: All right, it seems to me that's so, but I'll take it under consideration, but I think you have a very uphill battle. Have you Shepardized this case?

"[The Prosecutor]: I did not get a chance to because—

"[Defense Counsel]: There is a recent case, Your Honor, I think it is a 2005, but nothing more exciting than what the court has. It also is an Appellate Court case, not Supreme [Court]."

[5] In her argument before the trial court, the defendant's counsel conceded that she could not find any case law that held that reckless endangerment in the second degree was a lesser offense included within unlawful restraint in the first degree. Defense counsel argued, however, that reckless endangerment in the second degree was a lesser offense included within unlawful restraint in the first degree because, from looking at the elements of both offenses, it was clear that the elements of reckless endangerment in the second degree were subsumed by the elements of unlawful restraint in the first degree. Our Supreme Court has held that a defendant's failure to cite specific authority in support of a request for a charge on a lesser included offense is not fatal to a defendant's claim if there is no settled law on whether the offense for which the charge has been requested is in fact a

With respect to the second prong of *Whistnant,* the defendant argues that it is not possible to commit unlawful restraint in the first degree without committing reckless endangerment in the second degree. Pursuant to § 53a-95, "[a] person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury." Pursuant to § 53a-91 (1), " '[r]estrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved . . . ." Pursuant to General Statutes § 53a-64 (a), a person is guilty of reckless endangerment in the second degree "when he recklessly engages in conduct which creates a risk of physical injury to another person."

It is clear that an individual cannot "restrain" another individual without engaging in "conduct." At oral argument before this court, the state also conceded that a crime can be a lesser included offense of another even though the two crimes require different states of mind. See *State* v. *Rodriguez,* 180 Conn. 382, 407, 429 A.2d 919 (1980) ("[f]or purposes of the second condition of *Whistnant,* we conclude . . . that an offense that would be a lesser included offense but for its requirement of a less culpable state of mind than that required for the greater, will be deemed a lesser included offense"). Therefore, the "specific intent" element of unlawful restraint in the first degree and the "recklessness" element of reckless endangerment in the second degree do not preclude this court from concluding that reckless endangerment in the second degree is a lesser

lesser included offense of the offense charged. See *State* v. *Arena,* 235 Conn. 67, 77, 663 A.2d 972 (1995).

offense included within unlawful restraint in the first degree.

The last distinction between these two offenses is that unlawful restraint in the first degree requires the defendant to "expose" another individual "to a substantial risk of physical injury," and reckless endangerment in the second degree requires the defendant to "create" a "risk of injury" to another individual. The defendant claims that it is impossible to expose another individual to a substantial risk of physical injury without creating a risk of physical injury to that individual. The defendant argues that the act of exposing an individual to a risk, even if the risk originally was created by a third party, necessarily creates a risk to the individual who has been exposed to the risk. In other words, "exposing" an individual to an existing risk "creates" a separate risk to that individual. At oral argument before this court, the state conceded this premise, and we agree with it. Moreover, it is impossible to expose or to create a substantial risk of physical injury to an individual without exposing or creating a risk of physical injury to that individual. Therefore, having established that but for the mental state element, the defendant could not have committed unlawful restraint in the first degree without having committed reckless endangerment in the second degree, we conclude that the defendant has satisfied the second prong of *Whistnant*. See *State* v. *Rodriguez*, supra, 180 Conn. 407.

Next, we analyze together the third and fourth prongs of *Whistnant* because they are subject to the same evidentiary analysis. See *State* v. *Smith*, supra, 262 Conn. 468–69. "The third prong of *Whistnant* requires that there [be] some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense . . . . The fourth prong requires that the proof on the element or elements which differentiate the lesser

offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser. . . . [W]e will, however, consider the evidence available at trial in the light most favorable to the defendant's request." (Citations omitted; internal quotation marks omitted.) Id., 469–70.

Viewed in the light most favorable to the defendant, we conclude that the defendant has satisfied the third and fourth prongs of *Whistnant*. Baker and Mock were the primary sources of the state's evidence against the defendant. At trial, Baker testified that the defendant poured gasoline only on himself. He also testified that the defendant did not grab Mock and described his encounter with the defendant as a "fight." Mock also testified that the defendant poured gasoline only on himself, it was she who pushed the defendant and, on the night of the incident, her only concern was that the defendant might try to hurt himself. Although the statements made to the police by Mock and Baker on the night of the incident, which were admitted into evidence, provided a sufficient evidentiary basis to convict the defendant of two counts of unlawful restraint in the first degree, we also conclude that the trial testimony of Mock and Baker justified conviction of the lesser included offense of reckless endangerment in the second degree. The jury reasonably could have found that the defendant, while attempting to harm himself, recklessly engaged in conduct that created a risk of injury to Mock and Baker but that he did not intend to restrain them. See General Statutes §§ 53a-64 (a) and 53a-95. Moreover, when viewed in the light most favorable to the defendant, the evidence was sufficiently in dispute to allow a jury consistently to find the defendant innocent of unlawful restraint in the first degree and guilty of reckless endangerment in the second degree.

Accordingly, the defendant has satisfied the third and fourth prongs of *Whistnant*.

Having concluded that the court improperly failed to instruct the jury on reckless endangerment in the second degree as a lesser offense included within unlawful restraint in the first degree, we reverse the defendant's conviction of two counts of unlawful restraint in the first degree.[6]

### III

The defendant's final claim is that the court improperly joined for one trial the charges against him arising from the two unrelated incidents taking place on December 30, 2005, and January 31, 2006. Although, under most circumstances, charges arising from unrelated incidents should not be joined for one trial if one incident involves allegations of violent conduct and the other does not, under these circumstances, we cannot conclude that the court abused its discretion when it granted the state's motion to join these two cases.

"Practice Book § 41-19 provides that [t]he judicial authority may, upon its own motion or the motion of any party, order that two or more informations, whether against the same defendant or different defendants, be tried together. . . . In deciding whether to sever informations joined for trial, the trial court enjoys broad

---

[6] With respect to the defendant's conviction of unlawful restraint in the first degree, the defendant also argues that the court improperly instructed the jury on the definition of general intent because all of the crimes for which he was on trial required a finding of specific intent. The state conceded that the court improperly instructed the jury in this respect but argued that the error was harmless beyond a reasonable doubt. Because we reverse the defendant's conviction of unlawful restraint in the first degree on alternate grounds, it is unnecessary for us to consider whether the improper instruction on general intent was harmless beyond a reasonable doubt. We do, however, reiterate our previous holding that it is improper to instruct the jury on the definition of general intent if the defendant is on trial only for crimes that require a finding of specific intent. See, e.g., *State* v. *Lewis*, 113 Conn. App. 731, 738, 967 A.2d 618 (2009).

discretion, which, in the absence of manifest abuse, an appellate court may not disturb. . . . The defendant bears a heavy burden of showing that the denial of severance resulted in substantial injustice, and that any resulting prejudice was beyond the curative power of the court's instructions." (Citation omitted; internal quotation marks omitted.) *State* v. *Davis*, 286 Conn. 17, 27–28, 942 A.2d 373 (2008).

In the present case, with respect to the defendant's larceny conviction, the defendant cannot demonstrate prejudice from the joinder because the evidence of his guilt was overwhelming.[7] The defendant signed a confession in which he admitted to stealing between $15,000 and $17,000 worth of merchandise in two days. The state presented testimony indicating that the defendant admitted that all but $3000 worth of that merchandise was taken during the December 30, 2005 theft. The state also presented evidence that the defendant returned more than $1400 worth of stolen merchandise, which alone exceeded the $1000 value that the state needed to prove to convict the defendant of larceny in the third degree.[8] See *State* v. *Atkinson* 235 Conn. 748, 765, 670 A.2d 276 (1996) (no prejudice from joining charge of escaping from prison with "crime of an extremely violent nature" where defendant confessed to escape). Similar to the circumstances of *Atkinson*, the defendant admitted to the underlying facts of the larceny charge and offered no legal defense for his conduct. Moreover, the court's instructions to the jury regarding the joinder also were comprehensive.[9] Under

---

[7] We need not address the issue of whether the joinder resulted in substantial prejudice with respect to the unlawful restraint conviction because we already have concluded that the defendant is entitled to a new trial on that charge.

[8] General Statutes § 53a-121 (a) (1) provides in relevant part that "value means the market value of the property or services at the time and place of the crime . . . ."

[9] Before the jury was empaneled, the court instructed the prospective jurors that "each case must be considered separately and must be decided by your verdict independently of the others. Unless I tell you otherwise—

these circumstances, the defendant cannot show substantial prejudice from the joinder of his two cases.

The judgment in the second case is reversed only as to the conviction of two counts of unlawful restraint in the first degree and the case is remanded for a new trial on those counts. The judgments are affirmed in all other respects.

In this opinion the other judges concurred.

expressly tell you otherwise—you will not—you will not be allowed to use any evidence concerning one case to influence your deliberations and verdict on the other case."

In its final charge, the court instructed the jury that it "must consider, not only for the larceny but with regard to the other four alleged crimes, whether or not the state has met its burden of proof as to these crimes, separately and distinctly. . . . That is, you must consider the larceny charge and all of the evidence related to that charge, separately and distinctly, in arriving at your determination of whether or not the state has met its burden . . . . Then with regard to attempted assault in the first degree, you must consider, from all of the evidence, separately and distinctly, whether or not the state has met its burden of proving that case involving the alleged victim . . . . And same with the other two counts that occurred, supposedly, on the thirty-first day of January in 2006."