## DONALD MOODY *v.* COMMISSIONER OF CORRECTION
## (AC 31206)

DiPentima, C. J., and Bishop and Bear, Js.

Submitted on briefs December 7, 2010—officially released March 15, 2011

*Peter Tsimbidaros*, special public defender, filed a brief for the appellant (petitioner).

*Michael Dearington*, state's attorney, *Lisa A. Riggione*, senior assistant state's attorney, and *Linda N. Howe*, former senior assistant state's attorney, filed a brief for the appellee (respondent).

*Opinion*

BISHOP, J. The petitioner, Donald Moody, appeals following the habeas court's granting of his petition for certification to appeal from the judgment denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly rejected his claims of (1) ineffective assistance of trial counsel, (2) instructional error at his criminal trial and (3) ineffective assistance of appellate counsel in his direct appeal.[1] Each of these claims is predicated on the same underlying claims of instructional error, namely, that the jury instructions improperly (a) did not include a charge on lesser included offenses to murder,[2] (b) included the entire statutory definition of intent and (c) shifted the burden to the petitioner to prove self-defense and to disprove consciousness of guilt. We affirm the judgment of the habeas court.

The following procedural history, as set forth in *Moody* v. *Commissioner of Correction*, 108 Conn. App. 96, 946 A.2d 1268, cert. denied, 288 Conn. 906, 953 A.2d 649 (2008), is relevant to our disposition of the petitioner's claims. "The petitioner was twice tried on charges

[1] Although the petitioner's brief primarily addresses his claims of ineffective assistance of his appellate counsel, he intersperses additional claims throughout his brief alleging ineffectiveness assistance of his trial counsel and errors of the trial court. In an abundance of caution, we address all of these claims.

[2] The petitioner also appears to claim that his habeas counsel was deficient for failing to raise this issue in his first habeas proceeding. This claim was not raised in the amended petition, however, and cannot be considered in this appeal.

of having committed murder in violation of General Statutes § 53a-54a (a) and assault in the first degree in violation of General Statutes § 53a-59 (a) arising out of a fatal shooting that occurred in New Haven on November 9, 1994. In the first trial, the jury, on October 2, 1999, returned a guilty verdict on a charge of carrying a pistol without a permit, but the members of the jury were unable to agree on the murder and assault charges and a mistrial was declared on those charges. After the second trial, the jury found the petitioner guilty on the murder and assault charges on December 18, 2000. He was subsequently sentenced and thereafter appealed from the judgment. He claimed, inter alia, that the trial court improperly refused to admit the full transcript of a statement made to the police by a defense witness and that the court failed to investigate adequately whether jurors had seen certain notes made by the prosecutor. The judgment was affirmed." Id., 98.

The petitioner subsequently filed his first petition for a writ of habeas corpus, in which he claimed ineffective assistance of trial counsel. The habeas court, *White*, *J.*, denied the petition, and this court dismissed the appeal. Id.

The petitioner filed another amended petition for a writ of habeas corpus on November 10, 2008, claiming ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and instructional error. The matter was tried on May 19, 2009, and the habeas court, *Fuger*, *J.*, denied the petition in an oral decision. The court granted the petitioner's subsequent petition for certification to appeal from that judgment on May 26, 2009. This appeal followed. Additional procedural history will be set forth as necessary.

As a preliminary matter, we set forth our general standard of review for habeas corpus appeals. "The underlying historical facts found by the habeas court

may not be disturbed unless the findings were clearly erroneous. . . . Questions of law and mixed questions of law and fact receive plenary review." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 174, 982 A.2d 620 (2009). We turn now to the petitioner's claims.

## I

The petitioner first claims that his trial counsel was deficient in failing to request a charge on lesser included offenses and to object to an allegedly improper intent instruction. In his return to the amended petition, the respondent, the commissioner of correction, alleged that this claim had been decided in the first habeas proceeding and raised the defense of res judicata. We agree with the respondent.

We begin with our standard of review relevant to this particular claim. "[T]he interpretation of pleadings is always a question of law for the court. . . . Our review of the [habeas] court's interpretation of the pleadings therefore is plenary." (Internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 114 Conn. App. 778, 786, 971 A.2d 766, cert. denied, 293 Conn. 915, 979 A.2d 488 (2009).

"Our courts have repeatedly applied the doctrine of res judicata to claims duplicated in successive habeas petitions filed by the same petitioner." *Diaz* v. *Commissioner of Correction*, 125 Conn. App. 57, 64, 6 A.3d 213 (2010), cert. denied, 299 Conn. 926, 11 A.3d 150 (2011). "The doctrine of res judicata provides that a former judgment serves as an absolute bar to a subsequent action involving any claims relating to such cause of action which were actually made or which might have been made. . . . Specifically, in the habeas context, in the interest of ensuring that no one is deprived of liberty in violation of his or her constitutional rights . . . the

application of the doctrine of res judicata . . . [is limited] to claims that actually have been raised and litigated in an earlier proceeding." (Internal quotation marks omitted.) Id., 63–64.

In the present matter, the habeas court noted in its oral decision that, except for stating a few additional facts, the petitioner's claims in this regard were the same as those litigated in the first habeas proceeding, and, therefore, the petitioner was barred from relitigating them under the doctrine of res judicata. Indeed, the amended petition presented the same legal ground, namely, ineffective assistance of trial counsel, and sought the same relief that was denied in the first habeas proceeding;[3] see *Moody* v. *Commissioner of Correction*, supra, 108 Conn. App. 98; and failed to present newly available facts or evidence. Accordingly, the court properly declined to reach the merits of the petitioner's claims on the basis of res judicata.

## II

The petitioner also claims that the trial court improperly failed to charge the jury on lesser included offenses to murder, instructed the jury on the entire statutory definition of intent and shifted the burden to the petitioner to prove self-defense. In his return to the

---

[3] A petitioner does not present a new ground for relief by merely recasting and reformulating the same factual basis. *Smith* v. *Commissioner of Correction*, 122 Conn. App. 637, 641–43, 999 A.2d 840 (2010), cert. denied, 300 Conn. 901, 12 A.3d 574 (2011). The factual basis in the first habeas proceeding was trial counsel's failure (1) to call an eyewitness, (2) to introduce portions of a police interview, (3) to request a jury instruction on the defense of a third person, (4) to object to an inadequate instruction on self-defense and (5) to seek permission to question each of the jurors to see if they had been tainted. See *Moody* v. *Commissioner of Correction*, supra, 108 Conn. App. 101–105. The factual basis in the present claim on appeal is trial counsel's failure to request a charge on lesser included offenses and to object to an improper intent instruction. Despite this reformation of factual basis, the legal ground alleged and relief sought in the present claim are identical to that of the previously litigated claim.

amended petition, the respondent raised the defense of procedural default, alleging that these claims could have been raised at the time of trial or on direct appeal and that the petitioner had not shown " 'cause and prejudice' " as to why they were not so raised. The petitioner filed no reply to the respondent's claim of procedural default. We agree with the respondent.

Our review of the habeas court's interpretation of the pleadings is plenary. *Anderson* v. *Commissioner of Correction*, supra, 114 Conn. App. 786. Practice Book § 23-31 (a) requires a petitioner to file a reply "[i]f the return alleges any defense or claim that the petitioner is not entitled to relief, and such allegations are not put in dispute by the petition . . . ." The reply must admit or deny those allegations; Practice Book § 23-31 (b); and "allege any facts and assert any cause and prejudice claimed to permit review of any issue despite any claimed procedural default. . . ." Practice Book § 23-31 (c). "[T]he existence of cause for a procedural default must ordinarily turn on whether the [petitioner] can show that some objective factor external to the defense impeded counsel's efforts to comply with the [s]tate's procedural rule. . . . [For example] a showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials . . . would constitute cause under this standard. . . . A court will not reach the merits of the habeas claim when the petitioner fails to make the required showing." (Internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, supra, 788.

Accordingly, the habeas court properly determined in its oral decision that, because the petitioner failed to reply to the respondent's procedural default defense and failed to show cause and prejudice for neglecting to raise those claims earlier, the claims were procedurally defaulted. Therefore, the claim must fail.

### III

We turn next to the petitioner's claim of ineffective assistance of appellate counsel in his direct appeal. He claims that he was prejudiced by his counsel's failure to claim on direct appeal that the jury instructions improperly (1) failed to charge the jury on lesser included offenses to murder, (2) included the entire statutory definition of intent rather than specific intent only, and (3) shifted the burden to the petitioner to prove self-defense and to disprove consciousness of guilt. The habeas court found no deficient performance or prejudice that inured to the detriment of the petitioner in connection with the representation of his counsel on direct appeal. We agree with the habeas court.

We begin by setting forth the applicable standard of review. "To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense." (Internal quotation marks omitted.) *Moore* v. *Commissioner of Correction*, 119 Conn. App. 530, 534, 988 A.2d 881, cert. denied, 296 Conn. 902, 991 A.2d 1103 (2010). To prove deficient performance, "the [petitioner] must show that counsel's representation fell below an objective standard of reasonableness." *Strickland* v. *Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prove prejudice "requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." Id., 687. "Because the petitioner must satisfy both prongs of the *Strickland* test to prevail on a habeas corpus petition, this court may dispose of the petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Moore* v. *Commissioner of Correction*, supra, 535.

Our Supreme Court has distinguished the standards of review for claims of ineffective assistance of trial

counsel and appellate counsel. See *Small* v. *Commissioner of Correction*, 286 Conn. 707, 721–24, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). For claims of ineffective assistance of appellate counsel, "we must assess whether there is a reasonable probability that, but for appellate counsel's failure to raise the issue on appeal, the petitioner would have prevailed in his direct appeal, i.e., reversal of his conviction or granting of a new trial. . . . [T]o determine whether a habeas petitioner had a reasonable probability of prevailing on appeal, a reviewing court necessarily analyzes the merits of the underlying claimed error in accordance with the appropriate appellate standard for measuring harm." Id., 722. Additionally, although we ordinarily do not review unpreserved claims of error unless the appellant has requested extraordinary review; see, e.g., *State* v. *Romero*, 269 Conn. 481, 487, 849 A.2d 760 (2004); when reviewing the effectiveness of appellate counsel, we consider the merits of underlying claims of constitutional magnitude because they would have been reviewable on direct appeal pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[4] had appellate counsel requested such review. *Small* v. *Commissioner of Correction*, supra, 727 n.12.

In summary, to resolve whether the petitioner satisfied the prejudice prong of *Strickland* as refined by *Small*, we apply a *Golding* analysis to determine whether his unpreserved underlying claims of trial error

---

[4] Under *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.)

would have had a reasonable probability of success on direct appeal. Because this is a question of law, our review is plenary. See *Crawford* v. *Commissioner of Correction*, supra, 294 Conn. 174.

A

The petitioner claims that he was prejudiced by his appellate counsel's failure to raise a claim on direct appeal that the trial court improperly failed to charge the jury on lesser included offenses of manslaughter in the second degree and criminally negligent homicide. We disagree.

Because the petitioner neither requested the trial court to charge these lesser included offenses nor took exception to their omission from the jury instructions, the underlying claim of error was unpreserved and not amenable to ordinary review. Additionally, *Golding* review would have been unavailable on direct appeal because the claim is not of constitutional magnitude as required by *Golding*'s second prong. See *State* v. *Joseph*, 116 Conn. App. 339, 347, 976 A.2d 772 (2009) (right to jury instruction on every lesser included offense is purely matter of our common law, not fundamental constitutional right).

The petitioner proposes, as an alternate basis of review, that the trial court was bound to charge the jury, sua sponte, on lesser included offenses whether or not requested by the defense. Our Supreme Court, however, squarely rejected this proposition in *State* v. *Whistnant*, 179 Conn. 576, 427 A.2d 414 (1980): "It is . . . incumbent on the defendant to request such an instruction. Absent a refusal of the trial court to give [a] requested instruction, this court need not consider the defendant's contention that the trial judge erred in failing to charge the jury on an alleged lesser included offense." Id., 583. Here, the trial court did not refuse the instruction because the petitioner never requested

it. Consequently, because the merits of this claim would have been unreviewable on direct appeal, the petitioner was not prejudiced by his appellate counsel's failure to raise it.

## B

The petitioner next claims that he was prejudiced by his appellate counsel's failure to raise on appeal that the trial court improperly instructed the jury on the entire statutory definition of intent,[5] rather than specific intent only. We disagree.

The following facts are relevant to our resolution of the petitioner's claim. In its initial instructions on intent, the trial court included the definition of general intent a single time, stating that "a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result *or to engage in such conduct*"; (emphasis added); and instructed the jury to apply this definition to the murder and assault charges.[6] It subsequently referred back to this instruction three times. While explaining the murder charge

---

[5] General Statutes § 53a-3 (11) fully defines intent as follows: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

[6] The court's preliminary instruction on intent was as follows: "Throughout the balance of these instructions, I'm going to be using the term intent or intentionally in explaining the crimes charged in the information. It applies to this murder charge, and it applies to the assault charge as well. I want to explain this term intent now. Intent relates to the condition of mind of the person who commits the act, his purpose in doing it. As defined by our statute, a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result or to engage in such conduct.

"Now, what a person's purpose, intention or knowledge has been, it's usually a matter to be determined by inference. No person is able to testify that he looked into another person's mind or into his eyes and saw in them a certain purpose or intention or a certain knowledge to do harm to another. The only way in which the jury can ordinarily determine what a person's purpose, intention or knowledge was at any given time, aside from that person's own statement or testimony, is by determining what that person's conduct was, what the circumstances were surrounding that conduct, and, from that, infer what his purpose, intention or knowledge was. To draw

thereafter, however, the court defined the specific intent element as "intent to cause the death of another person" and repeated this definition ten times. Likewise, with regard to the assault charge, the court defined the specific intent element as "intent to cause physical injury to another person" and repeated this definition twice. During their subsequent deliberations, the jury members sent a note asking the court to clarify whether intent had to be directed toward the deceased victim. Twenty minutes later, they sent another note stating that they had clarified the question by themselves and announced five minutes later that they had reached a verdict.

The petitioner contends that the allegedly improper instruction regarding intent allowed the jury to find him guilty without finding that he intended to cause the specific result, and he asserts that the jury's notes demonstrate this prejudicial impact. Although unpreserved at trial, the claim would have been amenable to *Golding* review on direct appeal because it is of constitutional magnitude and the record is adequate for review. See *State* v. *Romero*, supra, 269 Conn. 505 (improper instruction on element of offense is of constitutional dimension). Therefore, because this issue could have been raised on appeal notwithstanding the absence of preservation, we likewise will review it on the merits in assessing appellate counsel's performance in this regard.

Our analysis is guided by well established principles. "[U]nder . . . *Golding*, a defendant may prevail on an unpreserved constitutional claim of instructional error

such an inference is not only the privilege but also the proper function of a jury, provided, of course, that the inference drawn complies with the standards for inference explained in connection with the instructions on circumstantial evidence. So, you should apply this definition of intent to the crimes charged in the information as they relate to intent, and as I go through it in each charge, and I'll remind you of that."

only if, considering the substance of the charge rather than the form of what was said, [i]t is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge." (Citation omitted; internal quotation marks omitted.) *State* v. *Tok*, 107 Conn. App. 241, 265, 945 A.2d 558, cert. denied, 287 Conn. 919, 951 A.2d 571 (2008).

"[I]t is improper for a court to refer in its instruction to the entire definitional language of [General Statutes] § 53a-3 (11), including the intent to engage in conduct, when the charge relates to a crime requiring only the intent to cause a specific result. . . . This court has further noted, however, that in cases in which the entire definition of intent was improperly read to the jury, the conviction of the crime requiring specific intent almost always has been upheld because a proper intent instruction was also given." (Internal quotation marks omitted.) Id., 269–70; see also, e.g., *State* v. *Austin*, 244 Conn. 226, 236, 710 A.2d 732 (1998) (no reversible error when improper intent instruction followed by numerous proper instructions on elements of murder); cf. *State* v. *Lopes*, 78 Conn. App. 264, 271–72, 826 A.2d 1238 (reversible error when improper intent instruction given directly in regard to elements of murder and not followed by numerous proper instructions), cert. denied, 266 Conn. 902, 832 A.2d 66 (2003); *State* v. *DeBarros*, 58 Conn. App. 673, 683, 755 A.2d 303 (reversible error when improper intent instruction not only given in initial and two supplemental charges but also referred to seven additional times), cert. denied, 254 Conn. 931, 761 A.2d 756 (2000).

In the present case, the trial court read the entire statutory definition of intent only once in a general, preliminary instruction. Although the court referred back to this instruction three times, it did not repeat the statutory language. Thereafter, the court expressly stated the specific intent element of murder eleven times and assault three times. It also expressly pointed out that specific intent was an element of murder but not of manslaughter in the first degree.

Reading the charge as a whole, we do not find it reasonably possible that the jury was misled. Nor, contrary to the petitioner's assertion, do we conclude that the jury notes demonstrate that the jury was misled. The notes refer to the notion of transferred intent, not the requisite mental state required for culpability. On the basis of the foregoing, we conclude that this claim had no reasonable probability of success on direct appeal, and, accordingly, the petitioner was not prejudiced by his appellate counsel's failure to raise it.

C

The petitioner's final claim regarding the performance of his appellate counsel is that he was prejudiced by his counsel's failure to raise a claim that the trial court's instructions improperly created mandatory presumptions that shifted the burden to the petitioner to prove self-defense and to disprove consciousness of guilt.[7] He argues that, given the court's improper definition of intent as a " 'conscious objective . . . to engage

---

[7] The petitioner also claims in his appellate brief that his appellate counsel should have claimed on direct appeal that the trial court improperly (1) gave inadequate instructions on self-defense and (2) gave no instructions on defense of another. The claim regarding the self-defense instruction was not raised in the amended petition and, therefore, cannot be considered in this appeal. The claim regarding defense of another was decided in the first habeas appeal and, therefore, is not subject to relitigation on the basis of the doctrine of res judicata. See *Moody* v. *Commissioner of Correction*, supra, 108 Conn. App. 103 ("[t]he [trial] court properly determined that there was no evidentiary basis on which to claim a defense of others instruction").

in such conduct'," the jury could have presumed that the petitioner was guilty of murder if he merely intended to fire his weapon, in effect relieving the state of its burden to disprove that he fired in self-defense and requiring the petitioner affirmatively to prove it. Similarly, he argues that the court's improper definition of intent, in conjunction with its instruction on consciousness of guilt evidence, allowed the jury to presume that any evasive conduct by him after the incident was evidence of guilt, in effect shifting to him the burden of affirmatively proving either that he did not engage in such conduct or that the conduct was consistent with his theory of self-defense. Stated succinctly, the petitioner claims that the court's instructions diluted the state's burden of proof. We disagree.

Although this claim is unpreserved, it would have been amenable to *Golding* review on direct appeal because it is of constitutional magnitude and the record is adequate for review.[8] See *State* v. *Howard*, 88 Conn. App. 404, 429, 870 A.2d 8 (claim of instructional error regarding burden of proof is of constitutional magnitude), cert. denied, 275 Conn. 917, 883 A.2d 1250 (2005). We note again that our inquiry, here, under *Golding*'s third prong, is whether it is reasonably possible that the jury was misled. See *State* v. *Tok*, supra, 107 Conn. App. 265.

The principles that govern the preceding claim apply to the present claim as well. It is premised on the allegation that the jury was misled as to the definition of intent, which is plausible only if the court's single incorrect statement is read in isolation from the rest of charge. The court provided the jury with the incorrect

---

[8] We recognize that a claim of error in a consciousness of guilt instruction is not of constitutional magnitude; see *State* v. *Coward*, 292 Conn. 296, 314–15, 972 A.2d 691 (2009); and distinguish that the present claim does not allege error in the consciousness of guilt instruction but, rather, a general dilution of the state's burden of proof.

definition once in a preliminary fashion. Thereafter, as part of its instruction on self-defense, the court expressly noted that "[o]nce self-defense is raised in a case, the state must disprove that defense beyond a reasonable doubt." Twice more, the court reiterated that the state was required to prove beyond a reasonable doubt that the petitioner did not act in self-defense. Reading the charge as a whole, it is not reasonably possible that the jury was misled regarding the state's burden of proof.

The same reasoning applies to the court's consciousness of guilt instruction.[9] This instruction followed shortly after the court's charge on the state's burden to prove guilt beyond a reasonable doubt. The court noted three types of consciousness of guilt evidence that were relevant to the present case, namely, fleeing, concealing evidence and making misstatements to the

---

[9] The court's instruction on consciousness of guilt evidence included the following statements: "Now, I mention this concept called consciousness of guilt. When a person is on trial for criminal offenses, it is proper to show his conduct as well as any declarations made by him subsequent to the alleged criminal offense, which may fairly have been influenced by that act. As this rule applies to this case, the law recognizes an accused's flight from the scene, his efforts to conceal or dispose of evidence, his misstatement to the police or other officials, which a jury can reasonably conclude were made in an attempt to avoid detection for the crimes charged here, or responsibility for the crimes charged here are admissible against him as evidence reflecting that he was conscious of his own guilt. Whatever you find proven in this regard must have been influenced by the criminal act charged here and not by any other reason consistent with innocence."

After summarizing the evidence related to flight, concealment of evidence and misstatements to officials, the court continued: "First, you must determine whether the state has proven any of such flight, concealment or misstatements, and, if so, if you find it proven, that the defendant did so in connection with these crimes. This does not raise a presumption of guilt. It is circumstantial evidence that you may or may not infer a consciousness of guilt from it. It is to be given the weight, if any, which you think it is entitled to under the circumstances. It is up to you, as judges of the facts, to decide whether the state has proven any such conduct or misstatement, and, if so, whether or not whatever has been proven reflects a consciousness of guilt. It's evidence for you to consider."

police, and the court twice expressly stated that it is the state's burden to prove that such conduct occurred. Furthermore, it instructed the jury that whatever the state had proved in this regard "must have been influenced by the criminal act charged here and not by any other reason consistent with innocence." The court repeated this instruction later and added: "This does not raise a presumption of guilt." Again, reading the charge as a whole, it is not reasonably possible that the jury was misled by the court's instruction as it pertained to the state's burden of proof. Consequently, we conclude that because this claim had no reasonable probability of success on direct appeal, the petitioner was not prejudiced by counsel's failure to raise it.

The judgment is affirmed.

In this opinion the other judges concurred.